## Hensyl, Treasurer, et al. v. Pomeroy's, Inc.

*Taxation — Mercantile taxes — Appraisement — Part of year — Acts of April 2, 1821, March 24, 1824, April 7, 1830, May 4, 1841, April 16, 1845, April 22, 1846, April 13, 1866, May 2, 1899, July 21, 1919, and June 30, 1923.*

1. Ever since the Act of April 2, 1821, 7 Sm. Laws, 471, a mercantile license has been required to engage in mercantile business.

2. The obtaining of a license must precede the doing of a thing which the license permits.

3. The form of mercantile license provided by the Act of April 7, 1830, P. L. 387, has never been abolished by law; the Act of May 4, 1841, P. L. 307, merely modified it by implication.

4. Under the Acts of May 2, 1899, P. L. 184, July 21, 1919, P. L. 1072, and June 30, 1923, P. L. 986, a retail dealer must pay a mercantile tax of $2 when he begins as a dealer, and a similar amount annually thereafter on Sept. 1st of each year. He must also pay on or before Sept. 1st of each year a tax of one mill on each dollar of the volume of business which he has done for the previous year ending Dec. 31st.

5. Taxes are not assessable in advance on any mercantile business; they must be assessed on the business after it has been actually transacted, and the whole volume transacted in any calendar year forms the only basis for its taxation within the next following year.

Appeal of the defendant from the finding of the County Treasurer and Mercantile Appraiser of Schuylkill County. C. P. Schuylkill Co., Sept. T., 1924, No. 171.

*William M. Fausset*, for plaintiff; *E. D. Smith*, for defendant.

KOCH, J., Feb. 16, 1925.—The defendant was incorporated on May 22, 1923, and on July 2, 1923, purchased the department store of Dives, Pomeroy & Stewart, in the City of Pottsville. From the latter date the defendant has been engaged in the retail business of selling goods, wares and merchandise in said store. The mercantile appraiser of this county appraised the defendant's business for the period from July 2, 1923, to May 1, 1924, at $892,490, and for the period from May 1, 1924, to May 1, 1925, at $1,070,988. The appraisements were arrived at by taking the defendant's volume of business for the six months from July 2, 1923, to Dec. 31, 1923, which was $535,494, and therefrom obtaining the average monthly sum of $89,294, and then multi-

Hensyl, Treasurer, et al. v. Pomeroy's, Inc.

plying that average by ten to obtain the appraisement for the first period, and by twelve to obtain the appraisement for the second period.

The defendant now challenges the right of the mercantile appraiser to levy a tax on the defendant for said periods upon the basis indicated.

Mercantile taxes originated by virtue of the Act of April 2, 1821, 7 Sm. Laws, 471, but the act applied only to retailers of foreign merchandise. They were obliged to take out an annual license in the form provided by the act. The license was good for a year from the 1st day of September, and persons doing business without such a license were indictable and punishable as for a misdemeanor. The act was amended March 4, 1824, 8 Sm. Laws, 199, but it was entirely repealed on April 7, 1830, P. L. 387. The Act of 1824, *inter alia*, provided for a license for a part of a year; it abolished procedure by indictment against delinquents and made it the duty of the county treasurer to sue them for the amount of duty payable agreeably to law, with 10 per cent. in addition thereto. The Act of 1830 provided a form for the license and made it effective from the 1st of May in each year. By the 10th section of the Act of May 4, 1841, P. L. 307-310, the provisions of said Acts of 1824 and 1830 were extended and applied to all persons engaged in selling or vending goods, wares, etc., of whatsoever kind and nature; whereas those acts had applied only to venders of foreign merchandise, spirits and wines. The Act of 1841 required dealers who confined their buying and selling wholly to domestic goods, wares and merchandise to pay only one-half the amount of the license fees fixed by the act. But the 11th section of the Act of April 22, 1846, P. L. 486, 489, made all dealers, both wholesale and retail, pay the same annual tax and license fee.

The office of mercantile appraiser was first established for only the Counties of Allegheny and Philadelphia, on April 16, 1845, P. L. 532, and for all the other counties in the State, on April 22, 1846, P. L. 486. Such appraisers have always been appointed, except in cities of the first class, by the county commissioners on or before the 30th day of December in each year.

The annual duties or fees fixed for licenses by the Act of 1824 were $15 for venders of foreign merchandise, including wines and spirits, and $10 for venders of merchandise only, or venders of only wines and spirits. Those so engaged were made known by the constables to the Clerk of the Court of Quarter Sessions or the clerk of the mayor's court in cities. Venders were classified by said Act of 1830 according to the amount of annual sales by them respectively made and effected. And, after the constables had returned their list of venders, it became the duty of the associate judges and the county commissioners, or the mayor's court, at the first term of said court in each year, to take up the returns of the constables and make a list of merchants and place them in that class which appeared right and just, "according to the amount of sales by them respectively effected annually."

Under the Act of 1830, any person commencing to retail after the time at which licenses were issuable was required to take out a license from that time until the next yearly issuing thereof, for which period he paid at the rate of $20 for the whole year. There were eight classes under the Act of 1830, and all those whose annual sales amounted to $2500 or less were in the eighth class and were required to pay $10. The Act of 1841 created fourteen classes, ranging from the first class, whose annual sales amounted to $300,000 and upwards, down to the fourteenth class, whose sales amounted to less than $5000. The fee for the fourteenth class was $7. The Act of April 13, 1866, P. L. 104, added six more classes to those created by the Act of 1841, ranging them according to annual sales from $500,000 to $4,000,000, and the license

fees for these six classes ranged from $350 to $1000. But neither the Act of 1841 nor any subsequent act contained any provision for a license for only a part of a year. All the mercantile license fees or taxes fixed by the Statutes of 1830, 1841 and 1866 were according to classifications based entirely upon the amount of annual sales.

As the Acts of 1824 and 1830 applied only to retailers of foreign merchandise, spirits and wines, and the rates for parts of years differed in the two acts, and as the classifications of the Act of 1841 made the lowest class pay but $7 per year, it would seem absurd to contend that the provision of the Act of 1830, requiring that "any person commencing retailing after the time at which licenses are issuable under this act, shall take out a license from that time until the next yearly issuing thereof, for which period he shall pay at the rate of $20 for the whole year," has any application at this time. And especially so in view of the Act of May 2, 1899, P. L. 184, which repeals all acts or parts of acts, general, special or local, that are inconsistent with it. This act abolishes all classifications and provides an entire system which is almost complete in itself. It is entitled "An act to provide revenue by imposing a mercantile license tax on venders of or dealers in goods, wares and merchandise, and providing for the collection of said tax." It provides everything essential to its purpose. It fixes the fee and rate; provides for the appointment of mercantile appraisers annually on or before the 30th day of December; requires the Auditor General to provide blank forms for the mercantile appraisers' use in obtaining such information as may be necessary in arriving at the actual amount of business transacted by dealers during the calendar year preceding that for which licenses are required; sets forth in detail the duties, powers and authority of the appraisers and of county treasurers; fixes penalties; gives the right of appeal; provides for suits to recover the fees and taxes; preserves the laws theretofore existing as to commissions, mileage and publication, and imposes on dealers the duty of putting up a sign at the entrance of their business places. It must be noted that the information which is required under the Act of 1899 to fix the mercantile tax is "the whole volume of business, including cash receipts and merchandise sold on credit," because the whole volume "which [it] is thus ascertained has been transacted during the preceding calendar year, shall be the basis upon which the license is to be rated." But the Act of 1899 contains no provision for a mercantile tax for a part of a year. It fixes "an annual mercantile license tax of $2 and . . . one mill additional on each dollar of the whole volume, gross, of business transacted annually." And that volume must be ascertained by taking the volume of business in the preceding calendar year as the basis. By the calendar year is meant the year which begins on the 1st day of January and ends on the 31st day of December: Carroll v. Wright, 63 S. E. Repr. 260-267, 131 Ga. 728; Ætna Ins. Co. v. Hawkins, 125 S. W. Repr. 313-316, 103 Tex. 195.

But a moment's consideration of all this legislation shows that ever since 1821 a license has been, and is now, required to engage in mercantile business. A license is authority or liberty to do or forbear some act; the admission of an idividual, by proper authority, to the right of doing particular acts, practicing a certain profession, or conducting a certain trade; a grant of authorization; a permit; a document or certificate conferring such authority or permission: Century Dictionary. The obtaining of a license must, therefore, precede the doing of the thing which the license permits. People must get a license to marry *before* they marry. To get the license afterwards would be folly. In the days of the retail liquor dealer it was a crime to do business

without a license. The form of mercantile license provided by the Act of 1830 has never been abolished by law; the Act of 1841 simply modified it by implication.

Since the Act of 1899, as amended in 1919, P. L. 1072, and 1923, P. L. 986, contains all that we yet need to determine the questions arising in this case, I will quote therefrom and comment thereon as I go along.

From section 1: "That from and after the passage of this act, each retail vender of or retail dealer in goods, wares and merchandise shall pay an annual mercantile license tax of $2, and each person so engaged shall pay one mill additional on every dollar of the whole volume, gross, of business transacted annually."

From section 11: "Each dealer who comes under the provisions of this act shall cause to be placed, permanently, at the entrance of his or their business, a sign describing the business in which the party is engaged, with his or their name or names upon the same, such sign; and a violation of the provisions of this section shall be punishable with a fine of $10, said fine to be collected as fines of like amount are now by law collected, and to be paid to the county treasurer."

These mean that when one wants to so deal he shall pay a mercantile tax of $2 and put up a proper sign when he begins, and that he shall pay a mercantile tax of $2 annually thereafter. Also, that, in addition to the mercantile tax of $2, the dealer shall pay one mill on each dollar of the whole volume, gross, of business transacted annually. Since the one mill is to be paid on the business transacted annually, it cannot be, and is not to be, paid before the business has been transacted.

From section 4: "The Auditor General shall be authorized and required to prepare and have printed proper blanks to be distributed to the mercantile appraisers in the several counties to each vender of or dealer in goods, wares and merchandise. These blanks shall be in the form prescribed by the Auditor General, and shall contain a request for such information as may be necessary in arriving at the *actual amount* of business transacted by the vender of or dealer in goods, wares and merchandise *during the calendar year preceding that for which the license is required.* The blanks thus prepared shall contain an affidavit; and every dealer subject to the provisions of this act shall be required to make affidavit, by oath or affirmation, as to the correctness of the return made. The whole volume of business, including cash receipts and merchandise sold on credit, which [it] is thus ascertained has been transacted during the preceding calendar year, shall be the basis upon which the license is to be rated."

From section 5: "It shall be the duty of each vender of or dealing in goods, wares and merchandise to fill up the blanks prepared by the Auditor General and return the same to the mercantile appraiser of the proper county within ten days from the date of the receipt thereof, with an affidavit thereto, certifying to the correctness of the return so made."

From section 6: "It shall be the duty of each mercantile appraiser appointed under the provisions of this act to forward by mail, at least ten days prior to the date when he makes a personal visit to the place of business of every person whom he is required by law to ascertain and assess, a blank prepared for distribution by the Auditor General as hereinbefore provided. It shall be the further duty of the mercantile appraiser, after mailing the blank as hereinbefore provided, in the several cities and counties of this State, personally to visit the store, or other place of business, of every vender of or dealer in goods, wares and merchandise, and, at the time of such visit, to

require each vender or dealer to make a return, under oath or affirmation, of the goods sold for the preceding calendar year on the blank forwarded, and he is hereby empowered to administer an oath or affirmation for that purpose. . . . He shall also leave a written or printed notice, to be prepared and furnished by the Auditor General, specifying the classification and amount of license money to be paid by such person to this State, and also the time and place, when and where an appeal will be held as required by law."

From section 9, as amended by the Act of 1923, P. L. 987: "It shall be the duty of every mercantile appraiser appointed under this act, on or before the 1st day of July in each year, to certify to the county treasurer a correct list of all venders or dealers in goods, wares and merchandise, assessed or to be assessed with a mercantile tax in the county for which he is appointed, giving the names and post-office address of the venders or dealers so returned; the classification and amount of license due by each. . . . After appeals have been heard and exonerations made, the corrected list shall then be certified by the county treasurer to the Auditor General on or before the 1st day of September of each year. It shall be the duty of each dealer or vender liable to taxation hereunder to pay said mercantile tax and take out, from the treasurer of the proper city or county, the license herein provided for on or before Sept. 1st of each year."

Taking the case before us, the defendant should have paid the $2 mercantile license tax on July 2, 1923, and the mercantile appraiser should, sometime between Jan. 1, 1924, and July 1, 1924, have ascertained, in the manner indicated in the quotations above, the whole volume of business transacted by the defendant during the calendar year which ended on Dec. 31, 1923. Having ascertained that amount (which appears to be $535,494), he should then have taken one mill on each dollar of that amount, or $535.49, as the tax due on the business which was transacted during the preceding calender year 1923. He should then have included that in his list and should have returned the defendant as liable to pay on or before Sept. 1, 1924, a mercantile license tax of $2 for permission to do business and the additional sum of $535.49 as the amount due for having done business in the previous calendar year.

And in this present year, 1925, the mercantile appraiser should ascertain, in the manner already indicated, the whole volume of business transacted by the defendant in the entire calendar year 1924. He should then, on or before July 1, 1925, determine the mercantile tax due at the rate of one mill on that volume and return the defendant as liable to pay a mercantile license tax of $2 for permission to do business after Aug. 31, 1925, and further liable to pay, before Sept. 1, 1925, the mercantile tax ascertained to be due on the business of 1924.

There is no warrant in the law for a mercantile appraiser, or any other officer, to make an estimate of the volume of business which the defendant may possibly transact in this calendar year. He is to ascertain the volume of business transacted in 1924, and then to tax that volume at the rate of one mill on each dollar. That being done, the defendant is to pay such tax on or before Sept. 1, 1925. Taxes are not assessable in advance on any mercantile business. They must be assessed on the business after it has been actually transacted. And the whole volume transacted in any calendar year forms the only basis for its taxation within the next following calendar year.

It, therefore, follows that the defendant is liable for the license fee of $2 in each of the years 1923 and 1924, and, in addition thereto, is liable for $535.49 for tax on the business actually transacted in 1923. The defendant will also be required, on or before Sept. 1, 1925, to pay $2 as the license fee

for this year, and, in addition thereto, a tax of one mill on the whole volume of business transacted in 1924. Neither of the assessments as set forth in the pleadings was properly made, and they must be disregarded.

As the Auditor General, upon his own petition, was allowed to intervene in this case, we will make an appropriate order so as to cover the costs.

And now, Feb. 16, 1925, the prothonotary is directed to enter judgment in favor of the plaintiff and against the defendant for the sum of $539.49, the costs of the case to be paid out of said sum.

From M. M. Burke, Shenandoah, Pa.