AETNA INSURANCE COMPANY v. WM. E. HAWKINS, COMMISSIONER OF INSURANCE AND BANKING.

No. 2067.  Decided February 23, March 2, 1910.

**1.—Fire Insurance—Bond—Statute Construed.**

Construing sections 1 and 3 of the Act of March 20, 1909 (Laws 31st Leg., p. 182) relating to fire insurance companies, it is held that they do not require, as a condition of doing business in the State, the execution of two bonds, one under each section; that the condition to "pay all its lawful obligations to citizens of this State," required in the bond mentioned in Section 1, is to be taken as meaning the same as the like condition in section 3, to pay such obligations "arising out of any policies or contracts issued by such fire insurance companies;" that section 3 is to be taken as explanatory and not as contradictory of section 1; that the judgment to be secured by the conditions of section 1 was of obligations such as, by its preamble, the Act was intended to provide for, arising on the policies of insurance issued by the company, and not for its debts in general, and that a bond conditioned as required by section 3 would be a compliance with the requirements of section 1. (Pp. 196–199).

**2.—Same.**

A foreign fire insurance company applying for a certificate of its right to do business for the year is required to execute a new bond for the year covered by its certificate. The requirement of section 3 of the Act of Ma. ch 20, 1909, forbidding it to issue policies without a bond filed "during the calendar year" evidently contemplated that the certificates would run as formerly for a calendar year. Since they do not, being issued under the new law on or about March 1, the requirement can not be literally complied with; but it is sufficient that a bond is filed at the time the certificate is taken out, and that it secures payment of obligations falling due within the year thereafter, for which the certificate is taken. (Pp. 198–200).

---

Original application to the Supreme Court by the Aetna Insurance Company, for writ of mandamus against Wm. E. Hawkins, Commissioner of Insurance for the State, to require the issuance of a certificate of its right to do business in the State.

*Wm. Thompson* and *James H. Robertson,* for relator.

*Jewel P. Lightfoot,* Attorney-General, and *John W. Brady,* and *C. A. Liddy,* Assistants, for respondent.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

The relator asks for a mandamus to require respondent to issue to it a certificate of authority to do a fire insurance business. The respondent has refused to issue the certificate for the reason that relator has not furnished the bonds, which, according to respondent's contention, are required by the Act of March 20, 1909. (Laws 31st Leg., 182.)

The controversy is as to the true construction of the provisions of that Act concerning the bonds exacted of fire insurance companies. The first point of difference is as to the number of bonds required, respondent demanding two upon the contention that one is required by the first section and another by the third section of the statute, while relator insists that the two sections require only one bond, the amount of the penalty of which depends upon the varying conditions prescribed.

While the two sections give color to the insistence of respondent, in that each provides for a bond without express reference to, or limitation upon the other, a close examination of the provisions, in connection with the account given of their passage through the legislature, convinces us of the correctness of relator's position. In the first place no sensible reason can be given for the requirement of two such bonds as would be produced if one were taken under each of the sections. The first section prescribes a bond in a sum equal to twenty-five per cent of premiums collected during the preceding year, not to exceed $50,000 nor to be less than $10,000, conditioned "that said company will pay all its lawful obligations to citizens of this State." The third section, in substance, provides that before any company shall issue any policy, etc., it "shall first have filed . . . during the calendar year in which such policy may issue . . . a bond . . . in a sum not less than ten thousand dollars, conditioned for the payment of all lawful obligations to citizens of this State arising out of any policies or contracts issued by such fire insurance company," and makes it a penal offense for any company to issue policies, etc., without having given this bond. It is thus seen that the condition is the same in the two sections except that the last adds the restrictive language, "arising out of any policies or contracts issued by such fire insurance company." If this should be regarded as requiring anything less than the first section, a question to which we shall recur, it is nevertheless true that a bond in the language of the first section would comprehend all that is provided for by the third, and, hence, if two bonds are contemplated, they would be for the same purpose, which requirement would appear to be senseless.

Further, we observe that section three names no payee and prescribes no rule by which the amount of the penalty is to be ascertained, except that it is to be "not less than" an amount named. This at once suggests the thought that some other part of the Act

is to be consulted to find the payee and the rule for fixing the penalty, and that the words, "not less than ten thousand dollars," were intended merely to require that, in any event, the bond in contemplation be at least in that sum; in other words, that section three is, in this particular, a complement of section one, intended to supply a further provision concerning the same bond there provided for. This theory meets with the difficulty that section one itself provides all that is essential, as to the elements of the bond, if only one is to be given, viz.: the rule for determining its sum, a maximum, a minimum and a payee, which raises the inquiry, why put this provision in section three only to erect a safeguard already provided in section one? A reasonable explanation is found in the journal of the Senate in which the bill originated. The original bill has, it seems, disappeared from the files, but the Senate journal gives the words which were stricken out and those which were added by amendment, and thus supplies the data for reproducing it by reinserting in the law, as it now stands, the words stricken out and omitting from it those inserted. When this is done we find that the bill as originally introduced provided in section one for a bond equal in amount to fifty percent of the previous year's premiums, and fixed neither a maximum nor a minimum. When it is considered that some companies might apply for certificates when they had previously done little or no business and could therefore be admitted practically without bond, it will be seen that this was not an adequate provision, a deficiency supplied by section three in the requirement of a bond of at least $10,000. The length of the provision and its verbosity may have been thought to be proper to the definition of the offense penalized by that section. Doubtless it was because section three was intended merely to prescribe a minimum amount for the penalty of the bond treated of by both sections and at the same time to make it an offense to do business without having given it, that no payee, nor rule for fixing the amount were therein prescribed, those things being left to be regulated by section one. We thus find what we regard as a reasonable explanation of a provision which, if regarded as the requirement of a bond for the same purpose for which another had already been required, would be inexplicable. Amendments were offered and adopted in the Senate which inserted in section one a maximum and a minimum penalty and thereby dispensed with the necessity of the provision of section three as to the amount and condition of the bond; but that section still performed an important office, in that it defined and punished an offense. Its provision concerning the bond was not amended or changed in any way and, therefore, it means, as it now stands in the law, no more than it meant when originally introduced. When a company applies for a permit and executes a bond as provided in the first section, which it must do before it is authorized to pursue its business, it has complied with the third section, in that it has "filed" a bond "in a sum of not less than ten thousand dollars." Doubtless this statute was framed upon the assumption that certificates of authority to do business in this State dated from the beginning of each year and that the necessary bond would then be given

and, hence, the language in section three, "during the calendar year in which such policy may issue."

Another contention of the relator is that it is not now required to give a bond at all, for the reason that it gave one in full compliance with section one of the Act, within ninety days after it took effect as required by section two, which will continue in force and meet the purposes of the law after the issuance of the new certificate applied for. To this we do not agree. Certificates of authority must, under other statutory provisions, be obtained annually. Section one of this Act requires that "every fire insurance company, etc., applying for a certificate of authority, etc., *shall, before obtaining such certificate*" file the prescibed bond. No business can be done without the annual certificate and no certificate can be obtained without the bond. It necessarily follows that the bond must be given whenever application is made for a certificate. The condition of the bond corresponds. It is that the company will *pay* all its lawful obligations, etc.; which plainly contemplates the accrual of liabilities which the company becomes bound to *pay,* and it is for this the bond is security. The obligation therefore is one to pay those sums for which the company becomes liable during the year covered by the bond; and for this reason, annual but not cumulative bonds are required. A good reason for this is the fact that the amount of insurance done by companies is liable to increase or diminsh from year to year, and the amount of the security intended by this bond would correspondingly vary. The requirement of an annual bond preserves the proportion between the volume of the business and the security. Indeed the contention, which we have sustained, that sections one and three relate to one and the same bond, necessitates this construction; for the bond referred to in section three is to be filed during the calendar year in which the business is done, and therefore business can not be done in one year under a bond given for another year.

The relator, however, tendered and is still ready to file a new bond such as we hold it was bound to give, and the contention just discussed is therefore not made essential to the remedy sought. We observe that the condition of the bond thus tendered is worded as in the third section of the statute. This we think is proper. From the construction that sections one and three refer to the same bond the conclusion results that but one condition was in view, which is ascertained by taking all the language together. Indeed the language added by section three to the condition might be implied in that of section one, since it is the doing of insurance business that is regulated, and not all the affairs and obligations of insurance companies, such as the payment of salaries, rents and other expenses or debts incurred. We are thoroughly satisfied that the purpose of this statute was only to require a bond, as its caption states, to secure the payment of liabilities accruing on contracts of insurance, including that created by the Act itself for the cost of reinsurance, which purpose is effected by the provisions of all the three sections relating to that one bond.

The relator is entitled to the relief sought upon filing the bond mentioned in paragraph six of the petition. Respondent was right,

in any view, in declining to accept a bond containing provisons and stipulations other than those prescribed by the statute.

*Writ awarded.*

### ON MOTION FOR REHEARING.

In his motion for rehearing respondent asks for further expression as to the character of the bond to be filed by relator and as to the time at which it is to be filed.

We think the difficulty in determining such questions will be overcome by keeping in mind and following what we have already decided—that only one bond is required, and that the several statutory provisions in question relate to it. The bond must, of course, comply with section one and contain the clause relating to reinsurance. The language of that section, expressing the condition to "pay all its lawful obligations to citizens of this State," unexplained by anything else in the statute and taken literally, might be held to require payment of all other obligations to such citizens, as well as those arising out of policies or contracts issued by the company. But section three also states this part of the condition, adding words to those contained in section one, and should, we think, be taken as explanatory and not contradictory of the latter. Thus viewed the added words of section three serve further to define the kind of obligations meant by section one. It follows that a bond containing everything else required by the statute and expressing the condition in the language of either section is sufficient, since both sections, in this particular, provide for the same thing, and the language of section three, explaining that of section one, would prevent a condition expressed in the language of the latter from being more onerous than required. The further trouble experienced seems to arise out of the language of section three which prohibits the issuing of policies until the bond shall have been filed *"during the calendar year"* of such issuance. Our holding was that the bond is only required by the statute to be filed before the issuance of the certificate of authority, as a prerequisite thereto. The difficulty suggested, as we understand it, is that the certificate is not issued on the first of January and does not correspond in duration with the calendar year. We understand that this had merely been a matter of practice with the department prior to 1909, but another statute was passed in that year under which certificates are issued on or about the first of March and continue in force until the same date in the next year. Hence it is urged that there is an interval between the first of January and the first of March which is covered by the certificate of authority, but during which the issuance of policies by the company would not be preceded by a bond "filed during the calendar year" of such issuance, as provided in section three. This law may be literally true; but we think it should be apparent that this statute, like very many others, can not be taken literally at every point without running it into absurdities. It has an obvious and simple purpose to accomplish and apparent inconsistencies and incongruities in its minor provisions should be so explained as to bring them into harmony with other provisions and with that purpose, which is merely to require a bond to secure

the payment of obligations on insurance policies and contracts as a condition precedent to doing such business in this State. As the certificate is the evidence of authority, the prescribing of the bond as a prerequisite thereof accomplishes the purpose to make the bond such a condition precedent.

As we said in our original opinion the words, "during the calendar year," were probably used because it was assumed that the certificate, in connection with which the bond was to be given, ran during the calendar year, and that the bond would correspond. But are the provisions of section one, in which the purpose of the law is clearly expressed and which we have construed in accordance with respondent's contention, to require a new bond whenever an annual certificate is to be issued, to be subordinated entirely to those few words of section three? Clearly not. But one bond is required and it takes effect contemporaneously with the taking effect of the certificate to obtain which it is given and continues effective during the life of that certificate, covering the entire year for which the latter is issued. This is the scheme of the statute, as reflected in section one. Section three is intended, not to alter, but to help out that scheme and should be accordingly construed and applied. Nothing more is needed to bring the provisions into harmony and carry out fully the object in view than to understand that, by "calendar year," the year during which the certificate of authority is to operate was intended, and that those words were used because it was supposed 'that the certificate ran with the calendar year. This construction is amply justified by a comparison of the different provisions.

*Motion overruled.*