**REPUBLIC INS. CO. et al. v. CUNNINGHAM et al.**

No. 2853.

Court of Civil Appeals of Texas. El Paso.
June 8, 1933.

Rehearing Denied July 13, 1933.

Smithdeal, Shook, Spence & Bowyer, of Dallas, Anderson, Orr & McCord, of Fort Worth, and Sleeper, Boynton & Kendall, of Waco, for appellants.

H. B. Sanders, Alex Pope, and Bartlett, Thornton & Montgomery, all of Dallas, for appellees.

HIGGINS, Justice.

The Home Fire Insurance Company was a fire insurance company incorporated under the laws of Arkansas. Becoming insolvent, it was placed in the hands of a receiver on November 24, 1930, by a court of that state.

For several years prior thereto it had been engaged in business in Texas, and on January 3, 1931, A. P. Cunningham was appointed receiver in this state by a district court of Dallas county.

For the years 1928, 1929, and 1930 the com-

pany had filed qualification bonds as required by articles 4925 and 4926, R. S., with the American Surety Company as surety.

In the receivership suit in Dallas county the surety company filed an interpleader bringing in the various claimants under the bonds, and sought to have its liability thereunder determined and satisfied. It tendered into court $52,566.63, admitted to be due upon the three bonds.

Among those so impleaded are the Republic Insurance Company and the Fidelity Union Insurance Company, insurance corporations incorporated under the laws of Texas; also certain compress companies also incorporated under the laws of this state.

The Republic and Fidelity Insurance Companies were doing business in this and other states, writing fire, windstorm, and other forms of insurance.

These two companies had entered into written agreements with the Home Company, termed cession treaties or agreements, whereby they reinsured certain of their risks with the Home Company. These agreements were in writing and executed by the executive officers of the respective companies. The risks were reinsured upon the basis of a division of the premiums.

No policies of reinsurance or other separate contracts were entered into between the companies covering the various reinsured risks, but the reinsurance records were kept by bookkeeping entries in the respective home offices of the companies based upon the terms of the cession treaties.

In 1929 and 1930 the Home Company issued to the various compress companies tornado or windstorm policies of insurance covering property in Texas owned by said companies. These policies were executed by said insurance company through the A. B. Banks Agency, an agency for it in Little Rock, Ark., duly authorized by said insurance company to execute such policies. None of these policies was executed, signed, or countersigned for said insurance company by any duly licensed and authorized agent or agency of said company in this state, although said insurance company had duly authorized and licensed agents and agencies in Texas.

None of the compress companies, prior to securing said policies of insurance, made affidavit that it was impossible to secure such insurance through a Texas agent or agency authorized to do business in the state of Texas, as contemplated by article 5058, R. S.

The premiums upon these policies were paid to the Home Company by the respective companies in whose favor they were issued.

The form of the qualification bonds is as follows:

"State of Texas, County of Travis

"Know All Men by These Presents: That pursuant to the requirements of the laws of the State of Texas, ———, a corporation, the same being a fire insurance company incorporated under the laws of ——— and having its domicile at ——— (and hereinafter called Principal), as principal, acting by and through ———, its president, and ———, its Secretary, who are thereunto by it duly authorized, and ——— a corporation, incorporated under the laws of ——— and having its domicile at ———, and having legal authority to do business in the State of Texas (and hereinafter called Surety) as surety, acting herein by and through ——— and ———, who are thereunto by it duly authorized, are held and firmly bound unto ——— Chairman, Board of Insurance Commissioners of the State of Texas, and his successors in office, in the full and just sum of ——— Thousand ($———) Dollars, for the payment of which at Austin in Travis County, Texas, well and truly to be made, said Principal and said Surety hereby jointly and severally firmly bind themselves and their successors and assigns, respectively.

"This bond shall be subject to successive suits by citizens of the State of Texas so long as any part of the same shall not be exhausted, and the same shall be kept in force and unimpaired until all claims of any and all citizens of the State of Texas arising out of any and all obligations of said Principal shall have been fully satisfied.

"In the event said Principal shall become insolvent or cease to transact business in the State of Texas at any time when it has outstanding any policies or policy of insurance in favor of any citizens or citizen of the State of Texas, or upon property in the State of Texas, the Chairman, Board of Insurance Commissioners of the State of Texas, and his successors in office, shall have the power and authority, after having given ten days' notice to the officers of said Principal or any Receiver in charge of said Principal's property and affairs, to contract with any other insurance company transacting business in the State of Texas for the assumption and reinsurance by it of all the insurance risks in the State of Texas of such Principal, which contracts shall also provide for the assumption by such reinsuring company of all outstanding and unsatisfied lawful claims then outstanding against such Principal; and in the event of said Chairman, Board of Insurance Commissioners, or any of his successors in office, making any such contract, and if the same shall be approved as reasonable by the Governor and by the Attorney General of the State of Texas, such reinsuring company shall be entitled to recover from said makers, of this bond, and thereon, in a suit or in suits

to be instituted in Travis County, Texas, the amount of the premium or compensation so agreed upon for such reinsurance.

"However, the condition of the above and foregoing obligation is such that if the above designated and bounden Principal shall well and truly pay all its lawful obligations to any and all citizens of the State of Texas, arising out of any policy or policies, contract or contracts, issued by said Principal during the year ending February ———, 19———, for which the certificate of authority to do business in Texas has been or shall be issued to it, and also any and all sums of money for reinsurance for which said Principal may be or become liable under the foregoing terms and provisions of this instrument, said obligation shall thereupon become and be null and void; otherwise, to be and remain in full force and effect."

The impleaded Republic and Fidelity Companies presented claims against the Home Company and the receiver for unearned premiums and fire losses on risks written in 1928, 1929, and 1930, covering property in Texas and other states, which risks had been reinsured in the Home Company under the cession treaties. The fire losses occurred prior to the cancellation of the reinsurance by the insolvency of the Home Company and receivership.

The impleaded compress companies presented claims for the unearned premiums upon the policies in their favor above mentioned.

Upon final hearing, the court rendered judgment in favor of the Republic and Fidelity Insurance Companies and the compress companies against the Home Company and the receiver Cunningham for the amount of their respective claims to be satisfied only out of the general assets of the Home Company in the possession of the receiver and denied them the right to participate in the proceeds of the qualification bonds which had been tendered in court by the American Surety Company.

The claimants appeal and complain of the denial of the right to participate in the proceeds of the qualification bonds.

### Opinion.

Article 5058, R. S., provides: "Any fire, * * * insurance company, legally authorized to do business in this State, is hereby prohibited from authorizing or allowing any person, agent, firm or corporation that is a nonresident of the State of Texas to issue, or cause to be issued, to sign or countersign, or to deliver, or cause to be delivered, any policy or policies of insurance on property, person or persons located in this State, except through regularly commissioned and licensed agents of such companies in Texas. This law shall not apply to property owned by the railroad companies or other common carriers.

Upon oath made in writing by any person that he can not procure insurance on property through such agents in Texas, it shall be lawful for any insurance company not having an agent in Texas to insure property of any person upon application of said person, upon his filing said oath with the county clerk of the county in which such person resides."

Article 5059, R. S. requires an affidavit from a company before it shall receive a permit to do business in this state that it has not violated said article 5058, while article 5060 prohibits the payment of commissions to nonresident agents. Article 5061 authorizes the commissioner of insurance to investigate violations of these articles, and article 5062 penalizes any company which has violated any of the foregoing provisions by revocation of its license for varying periods. It also penalizes in like manner any agent who violates the provisions of the law.

The foregoing articles were originally an act adopted in 1903, chapter 143, p. 232, Reg. Sess.

Article 4925, R. S. reads: "Every fire insurance company, not organized under the laws of this State, applying for a certificate of authority to transact any kind of insurance in this State, shall, before obtaining such certificate, file with the Commissioner a bond, with good and sufficient surety or sureties, to be approved by and to be payable to the Commissioner and his successors in office, in a sum equal to twenty-five per cent of its premiums collected from citizens or upon property in this State during the preceding calendar year, as shown by its annual report for such year. The bond in no case shall be less than ten thousand nor more than fifty thousand dollars, conditioned that said company will pay all its lawful obligations to citizens of this State. Such bonds shall be subject to successive suits by citizens of this State so long as any part of the same shall not be exhausted, and the same shall be kept in force unimpaired until all claims of such citizens arising out of obligations of said company have been fully satisfied. Such bonds shall provide that in the event the company shall become insolvent or cease to transact business in this State at any time when it has outstanding policies of insurance in favor of citizens of this State, or upon property in this State, the Commissioner shall have power, after having given ten days notice to the officers of such company, or any receiver in charge of its property and affairs, to contract with any other insurance company transacting business in this State for the assumption and reinsurance by it of all the insurance risks outstanding in this State of such company which is insolvent, or which has ceased to transact business in this State, which contract shall also provide for the as-

sumption by such reinsurance company of all outstanding and unsatisfied lawful claims then outstanding against such company which has become insolvent, or ceased to transact business in this State. In the event of the Commissioner making any such contract, and if the same shall be approved as reasonable by the Attorney General and the Governor of this State, the reinsuring company shall be entitled to recover from the makers of such bond the amount of the premium or compensation so agreed upon for such reinsurance. Any company desiring to do so may, at its option, in lieu of giving the bond required by this article, deposit securities of any kind in which it may lawfully invest its funds with the State Treasurer upon such terms and conditions as will in all respects afford the same protection and indemnity as herein provided for to be afforded by said bond."

Article 4926, R. S. reads: "Every fire insurance company, not organized under the laws of this State, hereafter issuing or causing or authorizing to be issued, any policy of insurance other than life insurance, shall first have filed with the Commissioner during the calendar year in which such policy may issue, or authorize or cause to be issued, a bond of good and sufficient sureties to be approved by such Commissioner in a sum of not less than ten thousand dollars, conditioned for the payment of all lawful obligations to citizens of this State arising out of any policies or contracts issued by such fire insurance company; which such bonds shall be subject to successive suits by citizens of this State so long as any part of the same shall not be adjusted, and so long as there remains outstanding any such obligations or contracts of such fire insurance company. This article shall not apply to any person, firm or corporation, or association, doing an inter-insurance, co-operative or reciprocal business."

These last two quoted articles were sections 1 and 3 of an act approved March 20, 1909. Chapter 102, p. 182, Acts 31st Leg. Reg. Sess.

The caption of that act reads: "An Act to require fire insurance companies not organized under the laws of this State, before they shall receive a certificate of authority to transact business in this State, and before they shall issue or authorize the issuance of any policies of insurance to citizens of this State, to file with the Commissioner of Insurance and Banking a bond or to deposit securities to secure the payment of all lawful obligations under such policies to citizens of this State; exempting from its provisions any person, firm, corporation or association doing an inter-insurance, co-operative or reciprocal insurance business; providing penalties for the violation of this Act, and declaring an emergency."

Appellees do not question the validity of the claims of the appellants as against the Home Fire Insurance Company and the right of appellants to look to the general assets of that company for payment of such claims.

The claims of the Republic and Fidelity Companies arise out of reinsurance contracts between them and the Home Company. No reason suggests itself which would impeach the validity of those contracts and the claims arising out of the same.

■ The claims of the compress companies arise out of policies of insurance issued in the manner shown above. The only matter that could be considered as impeaching the validity of those policies is the fact that they were issued and countersigned by nonresident agents of the Home Company, which was prohibited by article 5059, unless an affidavit was made as required by said article, which affidavit was not made by the compress companies.

But the only penalty for the violation of article 5059 is directed against the insurance company, and consists of a revocation of its license to do business in this state; the penalty being a revocation of the license for not less than three nor more than six months for the first offense and for each subsequent offense not less than one year. (Rev. St. 1925, art. 5062.)

The issuance of the policies by nonresident agents did not invalidate the same, and claims arising upon such policies in favor of the compress companies are enforceable. Hartford F. Ins. Co. v. G., H. & S. A. R. Co. (Tex. Com. App.) 239 S. W. 919.

But, aside from these considerations, the validity of the claims of appellants against the Home Company is not in issue, for the reason that the court has rendered judgment thereon in favor of appellants against the Home Company and the receiver, and ordered the same paid out of the general assets of the company in the receiver's hands. Appellees have not questioned the correctness of such judgment, and the claims now stand approved as valid obligations of the Home Company.

■ Appellees present but two propositions in support of the judgment denying appellants participation in the proceeds of the bonds given by the Home Company.

As against the Republic and Fidelity Companies, it is asserted they "are not entitled to share proceeds of qualification bonds filed in Texas by foreign corporations for the protection of fire insurance policy holders within the State of Texas, as provided by the statute, because the said insurance companies are not beneficiaries in policies of fire insurance as contemplated by the statute, but are merely parties to private reinsurance agreements or cession treaties made for the

purpose of indemnifying and prorating among the contracting parties the fire insurance losses which might be sustained by such insurance companies, regardless of the status or location of the property destroyed, or the residence of the insured in the original fire policy, and the judgment of the District Court in refusing such insurance companies the right to share in the trust funds created for the parties contemplated in the statute was correct."

As against the compress companies, it is said: "The Appellant Compress Companies, while corporate residents or citizens of the State of Texas, did not procure insurance in the insolvent Home Fire Insurance Company of Arkansas through duly licensed agents of such companies·in Texas, but procured such insurance from agents of the company in foreign states, and had thereby passed by the provision of the Texas statute enacted for the benefit of Texas policy holders and, having chosen to go elsewhere and effect their insurance, must be considered as having elected to look rather to the general assets of the insolvent company for reimbursement or protection than to the special fund created by the laws of the State of Texas for the benefit of Texas business; and, therefore, the judgment of the District Court in denying the right of such compress companies to share in the trust fund resulting from the qualification bonds, filed in accordance with the statute of the State of Texas for the benefit of persons contemplated therein, was correct and should be affirmed."

Article 4925 provides that the qualification bonds "shall be subject to successive suits by citizens of this State so long as any part of the same shall not be exhausted, and the same shall be kept in force unimpaired *until all claims of such citizens arising out of obligations of said company* have been fully satisfied." (Italics ours.)

Article 4926 provides the bonds shall be "conditioned *for the payment of all lawful obligations* to citizens of this State arising out of *any policies* or *contracts* issued by such fire insurance company; which such bonds shall be subject to successive suits by citizens of this State so long as any part of the same shall not be adjusted, and so long as there remains outstanding any *such obligations* or *contracts* of such fire insurance company." (Italics ours.)

The bonds in question conform to these statutory provisions.

There is nothing in the statutes or the bonds which can be construed as excluding from the protection of the bonds the claims of these appellants. On the contrary, the claims are clearly within the protection thereof because they are lawful obligations due citizens of this state arising out of and based upon policies and contracts of insurance issued by the Home Company in favor of citizens of Texas. Ætna Ins. Co. v. Hawkins, 103 Tex. 195, 125 S. W. 313; Ross v. Southern Surety Co. (Tex. Civ. App.) 169 S. W. 1056.

■ Appellants are corporations organized under the laws of Texas, and they are to be regarded as citizens of this state, within the meaning of the statutes in question. 14 C. J. 67.

■ Appellees argue that articles 4925, 4926, are ambiguous and conflicting, and it is therefore permissible to look to the original act of 1909 and its caption to ascertain the purpose of the law and its proper interpretation, and, upon referring to such caption, it will appear the purpose was to protect citizens of this state upon *policies of insurance* issued by resident agents to such citizens, and the act was not intended to protect claims of the nature held by appellants.

In American Indemnity Company v. City of Austin, 112 Tex. 239, 246 S. W. 1019, 1025, Chief Justice Cureton said: "But the Revised Statutes, as we have seen, are the law, and are to be looked to with safety and confidence by the citizen; nor need one, under the rules of construction shown in the authorities cited, look into the original acts, except to explain ambiguities in the Code. The Revised Statutes of this state, when once adopted, become the entire law on the subjects they purport to cover, unless specially excepted, and any inquiry into matters of legislative procedure by which the original session acts were adopted, for the purpose of impeaching the constitutional integrity of that procedure, is wholly inadmissible."

If there were any ambiguity in articles 4925, 4926, as they affect the question at issue, it would be permissible to refer to the original act. If there be no such ambiguity, there is no occasion for such reference. American Indemnity Co. v. City of Austin, supra; Dorsey v. Fidelity U. Cas. Co. (Tex. Civ. App.) 52 S.W.(2d) 775. There is an uncertainty or ambiguity in those articles which was considered and settled in Ætna Ins. Co. v. Hawkins, supra, but it has no relation to the present question. So far as concerns the question here involved, articles 4925, 4926, are plain and unambiguous.

■ Appellees cite cases from other jurisdictions in support of their position that appellants' claims are not protected by the bonds.

The rulings in those cases were based upon the statutes of those states, and upon examination of the opinions it will be found that none of those statutes has the broad scope of articles 4925, 4926, of our Code, and for that reason are not in point. These rulings show strong reasons why claims such as those of

these appellants should not be protected by the qualification bonds, but articles 4925, 4926, must be construed as they are written rather than as the court may think they should have been written.

A reinsurance contract, while not strictly speaking a policy of insurance, must, nevertheless, be properly regarded as an insurance contract, and the claims of the Republic and Fidelity Companies are lawful obligations arising out of such insurance contracts. In our opinion, they are plainly protected by articles 4925, 4926, and the bonds as they are written.

The same is true of the claims of the compress companies, for those are valid obligations arising out of valid policies of insurance.

Reversed and remanded, with instructions to award appellants their pro rata shares of the proceeds of the qualification bonds.