A. P. CUNNINGHAM, RECEIVER, ET AL. V. REPUBLIC INSURANCE COMPANY ET AL.

No. 6631.   Decided May 20, 1936.
Rehearing overruled June 17, 1936.
(94 S. W., 2d Series, 140.)

500

*Bartlett, Thornton & Montgomery, Harold B. Sanders,* and *Storey, Sanders & Sherrill,* all of Dallas, for plaintiffs in error.

Parties to private reinsurance agreements made for the purpose of indemnifying and prorating among the contracting parties the fire insurance losses which might be sustained by such insurance companies, regardless of the status or location of the property destroyed, or the residence of the insured in the original fire policy, are not holders of policies of insurance within the meaning of Articles 4925-26, R. S., and are not entitled to protection afforded by qualification bonds given by foreign fire insurance companies pursuant thereto. Aetna Ins. Co. v. Hawkins, 103 Texas, 195, 125 S. W., 313; State v. Western U. Tel. Co., 196 Ala., 570, 72 So., 99; Hopkins v. Commonwealth, 129 Va., 137, 105 S. E., 673; 4 Couch Enc. of Ins. Law, sec. 1; Parsons on Contracts (7 ed.) 418; 1 Joyce on Ins., 346, 398; 10 Tex. Jur., "Corporations," sec. 52.

A corporation incorporated under the laws of the State of Texas which procures insurance from agents of companies in foreign states, when it could secure such insurance through licensed agents of a foreign fire insurance company in Texas, waive the provisions of the Texas statute enacted for the benefit of Texas policy holders, and having chosen to go elsewhere they must be considered as having elected to look rather to the general assets of the insolvent foreign insurance company for reimbursement and protection rather than to the special fund provided under the Texas laws for the benefit and protection of policies written within the State. Hopkins v. Commonwealth, 105 S. E., 673; Northwestern Title Ins. Co. v. Fishback, 110 Wash., 350, 188 Pac., 469; Smelker v. Scott, 288 S. W., 801; Fidelity & Deposit Co. of Md. v. Tafoya, 270 U. S., 426, 70 L. Ed., 664, 46 Sup. Ct., 331.

*Smithdeal, Shook, Bowyer & Lefkowitz, Houston & Johnson,* of Dallas, *Anderson, Orr & McCord,* of Fort Worth, and *Sleeper, Boynton & Kendall,* of Waco, for defendants in error.

On the propositions in controversy. National Security Co. v. State ex rel Chamberlin, 59 S. W. (2d) 27; Hollin v. Essex Mut. Ben. Assn., 88 N. J. Law, 204, 96 Atl., 71; Southern Surety Co. v. Austin, 2 S. W. (2d) 1000; National Auto Service Corp. v. State, 55 S. W. (2d) 209; 1 Couch on Ins., p. 65, sec. 44; 1 Joyce on Ins., p. 342, sec. 112.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

The Home Fire Insurance Company of Arkansas, now insolvent, formerly had a permit to do business in Texas, and, in accordance with Articles 4925 and 4926 of the Revised Statutes, posted qualification bonds for the years 1928, 1929 and 1930, with the American Surety Company of New York as surety. In November, 1930, the Company was adjudged to be an insolvent in the State of Arkansas and a general receiver thereof was appointed. Later, plaintiff in error A. P. Cunningham was appointed receiver in Texas by a District Court of Dallas County in a suit styled L. P. Goodwyn v. Home Fire Insurance Company. By an amended petition in that cause the American Surety Company, as surety on the qualification bonds, was impleaded and, answering therein, admitted its liability on the bonds for the years 1928, 1929 and 1930, to the extent that it might be shown legally liable. It tendered into court money in payment of all claims construed by it as valid and enforceable against the proceeds of the bonds, impleaded various claimants under the bonds and sought to have its liability thereunder determined and satisfied. Among those made parties were Republic Insurance Company, Fidelity Union Insurance Company, and certain compress companies, all corporations created under the laws of Texas.

In the trial court after all the parties defendants had answered the claims fell into three general classifications: (A) Those of policyholders in Texas who were resident citizens of Texas holding policies written in Texas by Texas agents of the insolvent company covering property situated in Texas; (B) Those of Texas insurance corporations arising out of reinsurance contracts providing for the distribution of risks assumed by the respective insurance corporations upon policies written by them payable to citizens of various states upon property situated in various states; (C) Those of certain compress companies incorporated under the laws of Texas arising

out of policies written by the agent of the insolvent in Arkansas covering property situated in Texas. The claims falling under classification (A) were not resisted and are not in controversy. In the trial court the defendants whose claims fell under classifications (B) and (C) were denied the right to participate in the proceeds of the qualification bonds, but were awarded judgments against the insolvent company and its Texas receiver for the amounts of their respective claims, to be satisfied only out of the general assets of the insolvent in the hands of the receiver. The Court of Civil Appeals reversed the trial court's judgment and remanded the cause, with instructions to award all of the claimants their pro rata shares of the proceeds of the qualification bonds. 62 S. W. (2d) 339.

The case involves the construction of Articles 4925 and 4926, R. S., 1925, and related insurance statutes. Articles 4925 and 4926 read as follows:

Art. 4925 "Every fire insurance company, not organized under the laws of this State, applying for a certificate of authority to transact any kind of insurance in this State, shall, before obtaining such certificate, file with the Commissioner a bond, with good and sufficient surety or sureties, to be approved by and to be payable to the Commissioner and his successors in office, in a sum equal to twenty-five per cent of its premiums collected from citizens or upon property in this State during the preceding calendar year, as shown by its annual report for such year. The bond in no case shall be less than ten thousand nor more than fifty thousand dollars, conditioned that said company will pay all its lawful obligations to citizens of this State. Such bonds shall be subject to successive suits by citizens of this State so long as any part of the same shall not be exhausted, and the same shall be kept in force unimpaired until all claims of such citizens arising out of obligations of said company have been fully satisfied. Such bonds shall provide that in the event the company shall become insolvent or cease to transact business in this State at any time when it has outstanding policies of insurance in favor of citizens of this State, or upon property in this State, the Commissioner shall have power, after having given ten days notice to the officers of such company, or any receiver in charge of its property and affairs, to contract with any other insurance company transacting business in this State for the assumption and reinsurance by it of all the insurance risks outstanding in this State of such company which is insolvent, or which has ceased to transact business in this State, which contract

shall also provide for the assumption by such reinsurance company of all outstanding and unsatisfied lawful claims then outstanding against such company which has become insolvent, or ceased to transact business in this State. In the event of the Commissioner making any such contract, and if the same shall be approved as reasonable by the Attorney General and the Governor of this State, the reinsuring company shall be entitled to recover from the makers of such bond the amount of the premium or compensation so agreed upon for such reinsurance. Any company desiring to do so may, at its option, in lieu of giving the bond required by this article, deposit securities of any kind in which it may lawfully invest its funds with the State treasurer upon such terms and conditions as will in all respects afford the same protection and indemnity as herein provided for to be afforded by said bond."

Art. 4926. "Every fire insurance company, not organized under the laws of this State, hereafter issuing or causing or authorizing to be issued, any policy of insurance other than life insurance, shall first have filed with the Commissioner during the calendar year in which such policy may issue, or authorize or cause to be issued, a bond of good and sufficient sureties to be approved by such Commissioner in a sum of not less than ten thousand dollars, conditioned for the payment of all lawful obligations to citizens of this State arising out of any policies or contracts issued by such fire insurance company; which such bonds shall be subject to successive suits by citizens of this State so long as any part of the same shall not be adjusted, and so long as there remains outstanding any such obligations or contracts of such fire insurance company. This article shall not apply to any person, firm or corporation, or association, doing an inter-insurance, co-operative or reciprocal business."

■ We consider first the claims falling within classification (B), those of the Texas insurance corporations, based upon reinsurance contracts. It is settled that only policies or contracts of insurance are protected by qualification bonds furnished under the provisions of the above statutes. Aetna Insurance Company v. Hawkins, 103 Texas, 195, 125 S. W., 313; Ross v. Southern Surety Company, 169 S. W., 1056.

■ Reinsurance contracts are not policies of insurance. Neither are they contracts of insurance, as that term is generally understood. The parties to a contract of reinsurance are engaged in a kind of joint enterprise in the nature of a co-

partnership. By such a contract one insurance company does not insure the property of another insurance company, but only engages to indemnify it against liability upon its policies or contracts issued to owners of property. We cannot ascribe to the Legislature an intention to protect such joint adventurers to the detriment of policyholders. On the contrary, the ruling purpose was to protect the property owners in their usual insurance contracts. Allison v. Fidelity Fire Insurance Co., 81 Neb., 494, 116 N. W., 274, 129 Am. St. Rep., 694; Union Central Insurance Co. v. American Fire Insurance Co., 107 Cal., 327, 40 Pac., 431, 28 L. R. A., 692, 48 Am. St. Rep., 140; Shepherd v. Virginia State Insurance Co., 120 Va., 383, 91 S. E., 140; Aetna Casualty and Surety Co. v. International Re-Ins. Corp., 117 N. J. Eq., 190, 175 Atl., 114.

From the case last above cited we quote:

"* * * It would be reasonable to conclude therefore that by 'policyholders,' holders of 'policies,' the Legislature meant the holders of those contracts of fire or life insurance which the company was in the business of writing, and not the holders of contracts of guaranty or surety insurance which were merely incidental to the main business.

"This conclusion would be based upon, or fortified by the reasonable presumption that the purpose of the Legislature was to protect the general public—the ordinary citizens who bought 'policies' and who would have little or no opportunity to have or obtain knowledge as to the solvency or financial responsibility of insurance companies—by companies which might be irresponsible or poorly managed; to require that there should always be a fund, for the protection of the citizens who bought policies, which could not be dissipated, incumbered, or diminished by reason of any improper or unskillful management of the company's business or assets."

In the case of Shepherd v. Virginia State Insurance Company, supra, the Supreme Court of Appeals of Virginia had for determination the question of whether a domestic insurance company holding a contract of reinsurance was entitled to be classified as a policyholder under the provisions of a statute of that State readings as follows:

"Upon the bonds deposited as aforesaid, with the treasurer, by any such insurance company, the holders of all policies of said company made with residents of this state, or upon property located in this state, shall have a lien for the amounts due them respectively under or in consequence of such policies, for losses, equitable values, return premiums, or otherwise, and

shall be entitled to be paid ratably out of the proceeds of said bonds, if such proceeds be not sufficient to pay all of said policy holders; and whenever any such company, depositing bonds as aforesaid, shall have become insolvent or bankrupt, or shall have made an assignment for the benefit of its creditors, any holder of such policy shall have the. right to file a bill in the circuit court of the city of Richmond to enforce the said lien for the benefit of all the holders of such policies."

While the provisions of the statute there under construction are not in terms as broad as are the provisions of our statutes, above quoted, the question for decision was essentially the same as that presented here. This is made manifest when it is considered that our statutes have been construed, as above noted, to protect only holders of policies or contracts of insurance. Because the reasoning of the court in that opinion is clear and has our approval, we quote at length from it as follows:·

"The evident purpose of the Legislature, as it seems to us, and the one naturally attributable to it, was to protect property owners in their fire insurance contracts, and not to protect other insurance companies on their contracts of reinsurance. The business of insurance is in itself of such a character as to have evoked, in the public interest, much special legislation looking to its control. The average individual property owner is uninformed as to many of the details of the business, and, for this and other reasons, is not in a position to judge of the solvency of any particular company. The danger of imposition upon its citizens by irresponsible companies is one of the controlling reasons for the enactment of such a provision as is found in section 17 of chapter 2 of the Virginia Insurance Act. Neither this nor any other reason which occurs to us would seem to bring within the purpose of the statute a corporation whose own sole or chief business is that of insurance.

"It is true that reinsurance is a legitimate part of the business of an insurance company, and likewise true that a sound public policy would naturally lead every state to encourage and foster and endeavor to stabilize its resident insurance companies; but we cannot think the Legislature ever contemplated as a possible result of section 17 of the Virginia Act that a resident company would be permitted to bring a claim for fire losses and unearned premiums under a contract reinsuring its own risks in a foreign state into a ratable distribution of the proceeds of the bonds deposited, along with the holders of fire insurance policies protected in the act. Such a construction, in

our opinion, might often result, as it would do in the case at bar, in nullifying to a very material degree the ruling purpose in the statute."

Without further discussion we announce as our conclusion that claimants in class (B), Texas insurance companies whose claims are based upon reinsurance contracts, are not entitled to protection under the qualification bonds.

■ We consider next the claims falling in Class (C), those of compress companies, incorporated under the laws of Texas, holding policies issued, not through a Texas agent, but through an agent of the insolvent residing in Little Rock, Arkansas.

Article 5058 of our Revised Statutes provides:

"Any fire * * * insurance company, legally authorized to do business in this State, is hereby prohibited from authorizing or allowing any person, agent, firm or corporation that is a non-resident of the State of Texas to issue, or cause to be issued, to sign or countersign, or to deliver, or cause to be delivered, any policy or policies of insurance on property, person or persons located in this State, except through regularly commissioned and licensed agents of such companies in Texas. This law shall not apply to property owned by the railroad companies or other common carriers. Upon oath made in writing by any person that he can not procure insurance on property through such agents in Texas, it shall be lawful for any insurance company not having an agent in Texas to insure property of any person upon application of said person, upon his filing said oath with the county clerk of the county in which such person resides."

Passing by the Texas agents, the compress companies chose, for reasons which they deemed satisfactory, to go into another State and procure policies through a non-resident agent. The question is not whether, as between these policyholders and the company issuing the policies, the contracts were enforceable. These contracts, being made outside the State, could not be rendered unlawful by our statutes, as between the parties thereto. But when the question of the liability of the surety on the qualification bonds is considered, different principles have application. The surety company never assumed liability growing out of contracts which its principal was forbidden to write by the laws of Texas. Further, it must be assumed that the Legislature never intended to afford protection to parties who should aid the insurance company in violating the law. Certainly it would not encourage the disregard of its own enactments or provide protection for those who aided in ignoring

them. The Supreme Court of Mississippi considered this question in the case of Piedmont and Arlington Life Insurance Company v. Wallin, 58 Miss., 1, from which we quote as follows:

"The manifest object of art. 8 of chap. 55 of the Revised Code of 1871 seems to be to organize a scheme by which foreign insurance companies seeking to do business in this State shall appoint their local agents here in the mode prescribed by the statute, and protect the policies issued to our citizens by these agents by making with the State treasurer a deposit of securities to meet the losses on such policies.

"It thus makes them quasi home companies as to the business done here, and it is this business and those of our citizens who avail themselves of the scheme devised that are protected by the deposit.

"If a citizen of the State, passing by this provision organized for his benefit, chooses to go elsewhere and effect his insurance, he must be considered as electing to look rather to the general assets of the company than to the special fund held here for the benefit of the home business."

We are well convinced that class (C) claimants are not entitled to share in the proceeds of the qualification bonds. It is therefore our order that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

Opinion adopted by the Supreme Court May 20, 1936.

Rehearing overruled June 17, 1936.