

# The Attorney General of Texas

May 4, 1981

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Homer C. Foerster
Executive Director
State Purchasing & General Services
 Commission
L.B.J. State Office Building
Austin, Texas 78711

Opinion No. MW-332

Re: Interpretation of section 3.28
of article 601b, V.T.C.S.

Dear Mr. Foerster:

The State Purchasing and General Services Act, article 601b, V.T.C.S., was enacted in 1979. Among other things, it transferred the responsibility for procuring supplies and services for state agencies from the Board of Control to the State Purchasing and General Services Commission. Section 3.28 of the act provides that in making purchases the commission shall:

> (a) ... give preference to those produced in Texas or offered by Texas citizens, the cost to the state and quality being substantially equal.

> (b) If supplies, materials, or equipment produced in Texas or offered by Texas citizens are not substantially equal in cost and quality, then supplies, materials, or equipment produced in other states. .. shall be given preference over foreign-made products, the cost to the state and quality being substantially equal.

Prior law imposed a similar duty upon the Board of Control. Article 664-2, V.T.C.S., provided that the board shall:

> ... give preference to supplies, material or equipment produced in Texas or offered by Texas citizens, the cost to the state and quality being equal.

You state that, whereas article 664-2 was relatively straightforward, the inclusion of the qualifier "substantially" and the addition of paragraph (b) rendered section 3.28 ambiguous. Accordingly, in September 1980, the commission adopted an emergency rule (and proposed same for adoption as a permanent rule) concerning administration of the required preference. You have requested our opinion as to whether this rule is consistent with section 3.28. The rule provides that:

(2) For purposes of giving preference to Texas and United States products. .. the following requirements and definitions of terms will be applicable.

a. A preference. .. will not apply when the lowest and best bid is under $500.00.

b. A bidder entitled to a preference. .. shall mark the appropriate box on the face of the Invitation to Bid. No preference will be applied if it is not claimed in this manner. ...

c. 'Preference' shall mean the right to receive an award for a bid price not to exceed that bid by the vendor who would have received the award had it not been for the existence of the preference. If the lowest preferenced bidder refuses to lower his price to that of the lowest acceptable bidder, the opportunity will be given to each of any other 'preferenced' bidders in the sequence of their bids in increasing amounts over the lowest acceptable bidder. A preference to United States products will be granted only if supplies, materials, or equipment produced in Texas or offered by Texas citizens are not available for preference hereunder.

d. 'Produced in Texas' shall apply only to those supplies, materials, and equipment which are grown or manufactured in Texas. Manufacture shall not include the work of packaging or repackaging. ...

e. 'Offered by Texas citizens' includes offers from individuals, sole proprietorships, partnerships, corporations, and other recognized forms of business entities in Texas, but does not include offers from businesses owned or operated by 'foreign' corporations, or business entities, or citizens, of other states or countries, unless such businesses own or lease an office in Texas and have one or more employees in that office. A Texas citizen must have established legal residence in the state at the time of his offer. Business entities may also qualify as 'Texas citizens' for purposes of this test if they are majority owned by a citizen or citizens of this state, or if they are a corporation incorporated under the laws of the State of Texas.

f. 'Substantially equal' with reference to 'cost to the State' shall mean an amount of money not more than

> 2.0% over the lowest acceptable amount bid in a particular transaction.

Rule 028.12.01.055, 5 Tex. Reg. 3673 (1980).

At the outset, we must consider whether the commission is authorized to adopt administrative rules to implement section 3.28. That section is an integral part of article 3 of the act, which sets forth requirements pertaining to purchasing. However, whereas other articles explicitly authorize the commission to adopt rules to implement their provisions, e.g., sections 4.02(b), 5.15(e), 6.12, 7.05(c), article 3 provides no such specific authority. But that article does contain other provisions which, in our opinion, implicitly authorize such rules to be promulgated. Section 3.01(a), for example, directs the commission to "institute and maintain an effective and economical system for purchasing" supplies and equipment. Clearly, if the commission is to carry out its statutory mandate to develop and maintain such a system, which must take the statutory preference into account, it must be able to adopt rules to clarify the statutory provisions and requirements. Implied authority to adopt administrative rules exists when their adoption is necessary to achieve the objectives of the statute. Texas Liquor Control Board v. Super Savings Stamp Company, 303 S.W. 2d 536 (Tex. Civ. App. - San Antonio 1957, writ ref'd n.r.e.), cited with approval in Gerst v. Oak Cliff Savings & Loan Association, 432 S.W. 2d 702, 706 (Tex. 1968).

In exercising its rulemaking authority, however, the commission "may not act contrary to but only consistent with, and in furtherance of, the expressed statutory purposes." American Liberty Insurance Company v. Ranzau, 481 S.W. 2d 793, 796-97 (Tex. 1972). The critical inquiry in determining whether an agency has exceeded its rulemaking powers is whether the provisions of the particular rule are in harmony with the general objectives of the statute it implements. Gerst v. Oak Cliff Savings & Loan Association, supra. Each provision of this rule must therefore be examined, Texas State Board of Examiners in Optometry v. Carp, 412 S.W. 2d 307 (Tex. 1967), in order to determine whether it is consistent with section 3.28.

Section 2(a) of the rule provides that the statutory preference shall be disregarded when the lowest and best bid is under $500. The effect of this rule would be that a bidder whose bid of less than $500 is deemed lowest and best, but who is not entitled to the statutory preference, would automatically receive a contract, even though the bid and quality of product of a bidder who is entitled to the preference are substantially equal. Such a result is obviously not in harmony with section 3.28, which, by its terms, applies across the board in all purchasing situations. Cf. V.T.C.S. art. 601b, §3.08. We therefore conclude that in enacting section 2(a), the commission exceeded its rulemaking authority.

On the other hand, we believe that sections 2(b), 2(c) and 2(d) reflect a permissible exercise of that authority. Section 2(b) is obviously intended to facilitate the process of evaluating bids and awarding contracts as required by article 3, and cannot be said to be unreasonable provided that bidders are informed, by the bid invitations or otherwise, of the existence of the statutory preference. Section 2(c), in our opinion, defines "preference" in a reasonable manner, particularly in light of the fact that the act itself does not define that term or otherwise suggest that the

legislature intended that it be construed as requiring that a preferred bidder be awarded a contract solely because he is preferred. And we have no doubt that the distinction made in section 2(d) between items grown or manufactured in Texas and those which are packaged or repackaged here is in harmony with the statute.

We also conclude that section 2(f) is reasonable. When the legislature, without explanation, changed "equal" to "substantially equal," it introduced an element of ambiguity which had not previously existed. Absent any guidance as to the significance of this change, the commission, of necessity, developed its own definition of that phrase. In our opinion, its conclusion that a bid which is not more than 2% over the lowest acceptable bid is a "substantially equal" bid is not inconsistent with section 3.28.

We finally consider section 2(e), which construes the phrase "or offered by Texas citizens." It is suggested in an accompanying brief that in enacting this rule, the commission "added a dimension" to section 3.28 which was not intended by the legislature, in that the statute requires the commission to look only to where products are produced in order to determine whether the preference applies in a given situation. We agree that section 2(e) is inconsistent with section 3.28, but we do not share the view that a Texas preference cannot exist unless the products in question are produced in Texas. Section 3.28(a) unequivocally states that materials and equipment which are "produced in Texas or offered by Texas citizens" (emphasis added) shall be preferred. We will not depart from the plain meaning of the statute absent any indication that such departure is necessary to give effect to the legislature's intent. See Brazos River Authority v. City of Graham, 354 S.W. 2d 99 (Tex. 1961).

Under its proposed rule, the commission interprets the term "Texas citizens" to include partnerships, corporations, and other recognized forms of business entities with a business presence in the state. It has been said that "citizen" ordinarily means only a natural person and will not be construed to include a corporation unless the general purpose and import of the statute in which the term is found seems to require it. St. Louis & S.F.R. Co. v. State, 179 S.W. 342 (Ark. 1915).

A citizen is one who, as a member of a nation or a body politic of the sovereign state, owes allegiance to and may claim reciprocal protection from its government. Citizenship is a status or condition and is the result of both act and intent. Ozbolt v. Lumbermen's Indemnity Exchange, 204 S.W. 252 (Tex. Civ. App. - Austin 1918, no writ); Attorney General Opinion M-702 (1970). See Koy v. Schneider, 221 S.W. 880 (Tex. 1920). Corporations and other artificial legal entities have no power to freely form the requisite intent that together with necessary acts results in citizenship. Unlike a natural person, a corporation cannot change its domicile at will; thus, its "intent" is irrelevant. Cousins v. Sovereign Camp, W.O.W., 35 S.W. 2d 696, 698 (Tex. 1931).

Although a domestic corporation may nevertheless be considered a "citizen" of its state of origin for special purposes, such as federal diversity jurisdiction, other business entities have been denied even that claim. Village Mills Co. v. Houston Oil Co. of Texas, 186 S.W. 785 (Tex. Civ. App. - Beaumont 1916, no writ). Cf. H. Rouw Co. v. Railway Exp. Agency, 154 S.W. 2d 143 (Tex. Civ. App. - El Paso 1941, writ ref'd). And although a corporation is generally a "person" within the meaning of the law, "state

citizenship" in Texas is normally a status occupied only by natural, not artificial, persons. See Evans v. American Publishing Co., 13 S.W. 2d 358 (Tex. 1929); Attorney General Opinion H-481 (1974). See also Bus. Corp. Act art. 7.07(A) ("citizen. . . or corporation"); Alco. Bev. Code §1.07(a) ("Texas citizen. . . individual,. . . stockholders of a corporation, or members of a partnership, firm, or association"). (Emphasis added). Cf. Cunningham v. Republic Ins. Co., 94 S.W. 2d 140 (Tex. 1936), rev'g Republic Ins. Co. v. Cunningham, 62 S.W. 2d 339 (Tex. Civ. App. - El Paso 1933).

We are aware of nothing which indicates that in enacting the preference law, the legislature intended to enlarge the generally accepted definition of "citizen." On the contrary, the history of the provision supports the view that of the two Texas preferences permitted (the first for products "produced in Texas" and the second for products "offered by Texas citizens"), the first is applicable if the products offered are produced in Texas, regardless of the "citizenship" or natural or artificial character of the person or entity bidding; and the second is applicable if the bidder offering them is a natural person who is a citizen of Texas, regardless of the place where the products offered are produced.

The "Texas preferences" are contained in subsection (a) of section 3.28. The language of the subsection exactly tracks the language of former article 664-2 except for the addition of the word "substantially" modifying "equal." Except for that change, the meaning of the provision presumably remains the same. See Evans v. American Publishing Co., supra. Former article 664-2 was the codified version of Senate Bill 150, authored by Senator Lock. Acts 1957, 55th Leg., ch. 303, at 738. When Senate Bill No. 150 was originally introduced it created no preference for products "produced in Texas." Instead, it directed that state agencies give preference:

> to the person who is a Texas citizen or to the firm, corporation, association or business organized in Texas offering the supplies, material, merchandise or equipment. (Emphasis added).

The Committee on State Affairs, however, dropped the emphasized language, so that when it was reported to the floor of the Senate, the bill was designed to give preference only to products "produced or offered by Texas citizens." By floor amendment (proposed by Senator Lock), the Senate inserted the words "in Texas" after the word "produced", so that the final measure created a preference for products produced in Texas as well as one for products offered by Texas citizens. Senate Journal, 55th Leg., March 18, 1957, at 483.

The 1957 law, former article 664-2, replaced a prior statute (former article 647, V.T.C.S.) which had favored "bidders who have an established local business." Under the wording of that statute corporate bidders organized under the laws of Texas and doing business in the state were held entitled to a preference. Attorney General Opinion O-1678 (1939). The discrimination against foreign corporations was expressly justified in Attorney General Opinion O-1678 on grounds that:

> [a] corporation is not a 'citizen' within the meaning of that clause of the Federal Constitution which declares that the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states, or the clause in the

Fourteenth Amendment providing that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.  They are mere creatures of the local law, entitled to recognition in other states and to the enforcement of their contracts therein only on such terms as such states may see fit to impose.

In view of the construction given the term "citizen" in connection with tl earlier statute and the history of the 1957 enactment, it cannot be doubted that tl term "citizens" as used in former article 664-2, V.T.C.S., was meant to embrace on natural persons, and not artificial persons or business entities.  Although we understar the desirability and logic of giving preference to "Texas Corporations" offering good the legislative history discussed above compels us to believe that under section 3.28(. preference can be given only to natural persons (Texas citizens) offering goods.  W therefore conclude that in promulgating section 2(e) of its rules, insofar as it permi any person or entity other than a natural person to obtain a preference on the basis c "Texas citizenship," the commission exceeded its rulemaking powers.

## SUMMARY

In enacting sections 2(a) and 2(e) of the emergency and proposed rule implementing section 3.28 of article 60lb, V.T.C.S., the State Purchasing and General Services Commission exceeded its rulemaking authority. Sections 2(b), 2(c), 2(d) and 2(f) reflect a permissible exercise of that authority.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible & Bruce Youngblood
Assistant Attorneys General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Robert W. Gauss
Rick Gilpin
Bruce Youngblood