In the matter of the NEW JERSEY FIDELITY AND PLATE GLASS INSURANCE COMPANY, in liquidation.

[Decided April 16th, 1937.]

*Mr. John Milton,* for the commissioner of banking and insurance of New Jersey.

*Mr. Collin Minton* and *Messrs. Burnett & Trelease,* for certain creditors.

BUCHANAN, V. C.

The commissioner-liquidator of the above named company filed petition asking *inter alia* the instruction of the court as to certain questions arising in regard to the administration of this trust. Notice thereof, and opportunity to be heard thereon, was given to all parties in interest, by order to show cause made on December 3d, 1936, in which the several questions aforesaid were set forth. Hearings have been duly had thereon, and briefs submitted. In only one instance, and as to only one question (hereinafter referred to) were any views submitted to this court in conflict with the views submitted by counsel for the petitioner.

Consideration of the several questions leads to the conclusions hereinafter set forth.

A. *As to the Rights of Creditors in Statutory Deposits.*

1. Securities of the par value of $364,000, deposited by the company, were held by the commissioner of banking and insurance (as such, and not as liquidator) at the time he took over the affairs of the company; were by him sold and converted into cash; the cash fund thereby realized and now held by him amounted to $382,560.40 (possibly somewhat increased by interest subsequently earned thereon).

The controverted question hereinbefore referred to, was whether or not these securities constituted a special trust fund for the benefit of policy holders; counsel for several creditors who admittedly were not "policy holders," contended that there was no sufficient evidence to justify such a finding. The result of the entire evidence on this point however seems convincing beyond question that the securities did constitute such a special trust fund.

Section 8 of the Insurance act required the deposit by the company of securities aggregating $50,000 and authorized the commissioner to require deposits up to the amount of $100,000. Section 10 of the act provides that the commissioner shall hold the securities so deposited "for the benefit and security of all the policy holders of the company depositing the same." They constitute a special trust fund as security for the claims of policy holders,—*Aetna, &c., Co.* v. *International, &c., Co., 117 N. J. Eq. 190; 175 Atl. Rep. 114.*

There is no direct evidence contemporaneous with the deposit of any of the securities in question showing the specific direction or purpose of the company in making deposit thereof. The certificate of the commissioner, issued to the company December 31st, 1930 (seventeen months before the liquidation commenced) is that he then had in his custody, and registered (payable to) in his name as commissioner, securities aggregating $369,000 par value, the property of the company and held by him "in trust for all the policy holders of said company in accordance with the provisions of the statute (of New Jersey) in such case made and provided." This in itself evidences or constitutes a declaration of trust by the commissioner; it also (because of the acquiescence and lack of dissent by the company thereto) evidences that the company deposited them upon such trust. The evidence further shows that the company, by its annual statement for the year 1931, (shortly before liquidation) set forth the fact that it had then on deposit with the commissioner, "held for the protection of *all* the policy holders of the company," $364,000 par value of securities, and had no other deposit with the commissioner; and the evidence of the special deputy commissioner and also of the assistant treasurer of the company shows that all of the $364,000 par value of securities held by the commissioner at the time he took over, were all registered (with the several companies who issued the securities), in his name as commissioner "in trust for policy holders of New Jersey Fidelity and Plate Glass Insurance Company."

The only pertinent provisions of the New Jersey statute "in such case made and provided" (as mentioned in the commissioner's certificate referred to above), are sections 8 and 10 of the Insurance act already mentioned, and sections 22 and 23 thereof. These latter provide that the commissioner may receive a deposit "of such securities as shall be necessary to enable such (insurance) company to transact business in any other state * * * under the laws thereof."

The evidence shows that the company did do business in many other states, and it is quite possible therefore that the deposit by it of securities over and above the $100,000 men-

tioned in section 8, may have been made under section 22. Assuming this to be so, there is no evidence that the laws of such other states imposed any different trust or character upon such deposited securities than that provided by the law of this state; and in that case the presumption would be that there was no such different provision,—that it was the same as that of this state.

Taking the other possibility,—that they were not deposited under section 22,—they must then be deemed to have been deposited under section 8.

The fact that section 8 only authorizes the commissioner to *require* deposit up to $100,000 in nowise precludes the company from depositing a greater amount.

Finally, it seems controlling that the securities *were* in fact deposited with, and held by the commissioner in trust for the security of all the policy holders of the company. This trust the company could create irrespective of the statutory provisions; and this it *did* create; and it existed at the commencement of liquidation. The securities therefore were held on that trust; the same trust of course attached to the proceeds of sale,—the trust *res* in changed form; and still attaches thereto.

2. This trust fund is held in trust primarily and preferentially as security for those creditors of the company who are "policy holders" of the company. They are first entitled to be paid therefrom the amounts of their several claims; and since the aggregate of such claims, allowed as valid, greatly exceeds the fund, it is not necessary to consider the secondary rights of any other parties therein.

3. This trust fund should be administered as a separate trust fund, separate and apart from the general assets of the estate.

4. As to what creditors are "policy holders:"

(a) The claims of creditors based on policies held by them insuring against the risks of automobile liability, property damage, collision damage, workmen's compensation, public liability, burglary and plate glass are claims coming within the class for which this trust fund is security. So also are claims for return premiums in respect to such policies; they

are obviously claims of policy holders, and based on the contract provisions of the policies. The same is true as to such claims by assignees of the policy holders; they are still the claims of policy holders, notwithstanding they have been assigned to assignees,—and the assignees stand in the place and stead of the original policy holders.

(b) The claims of injured third persons, based on the provisions of liability policies and of the statutes giving such third persons the right of direct suit against the company thereon, also come within the class secured by this trust fund. From an equitable standpoint these claims are claims based on the policy contracts,—claims for the performance of the contract to indemnify the insured, by paying (or otherwise procuring the discharge of) liabilities incurred by the insured and covered by the policy. The statutory provisions subrogate the third persons to the rights of the policy holders; and to deny the third party claimants the benefit of this trust fund in the right of the policy holder would be to subvert the legislative purpose and contravene the public policy thereby clearly indicated.

(c) Claims filed by agents of the company who have paid claims on behalf of the company, for reimbursement for such payments, are not claims of policy holders nor based on the policy contract; they are based on a different contract, express or implied, for such repayment. Of course where such agents have taken assignments from the policy holders and their claims are based thereon, they come within the class referred to in paragraph (a) above.

(d) Claims for payment for services by agents, attorneys, physicians, adjusters and the like and for payment for merchandise and supplies of various kinds, are obviously not claims of policy holders, notwithstanding such services or property may have been supplied to or for the company in, and for the purpose of, the performance by the company of its policy-contract obligations.

(e) Claims by other insurance companies based on contracts of re-insurance. These are of two kinds,—one by companies whose direct liability on policies issued by *them* was re-insured by Fidelity; the other by companies who

re-insured Fidelity's direct liability on policies issued by *it*. The first group are not entitled to share in this special trust fund; this was specifically decided in *Aetna* v. *International, supra*. That opinion further indicated also that the second group would not be entitled to share therein, unless perhaps by virtue of some right of subrogation. No claim of any such right by subrogation has been advanced by any such re-insurer in this proceeding; and it is deemed that any such re-insurer would have no rights in this special trust fund arising simply from the contract of re-insurance, whether by way of subrogation or otherwise. This is for the reasons set forth in the *Aetna* case, as to the character of such re-insurer as a "partner" rather than a policy holder. Essentially the agreement between the companies in regard to these re-insurance is that of participation,—a sharing between or among them of the premiums and the losses involved in the policy issued to the actual policy holder. The position of such re-insuring company is therefore that of an insurer, not an insured; and indeed the claim of such re-insurer is obviously based on no *policy* of Fidelity held by the re-insurer,—it is based on some such participation contract. If the re-insurer has paid, or is called upon to pay, losses to the holder of Fidelity's policy, it can have no subrogation to the rights of the policy holder against Fidelity, even if it takes an assignment from the policy holder, because by virtue of the participation agreement between the companies it was intended and agreed that the liability for such payment was assumed by the re-insuring company, and that there should be no recourse over against Fidelity by the re-insurer; and the consideration for that assumption of sole liability was its share of the premiums. If in any instance such re-insurer did not receive its share of the premiums, its claim is obviously a claim for such premiums based on the participation agreement and not on the policy held by the assured.

(f) Claims by the holders of fidelity and surety bonds issued by the company, whether for breaches of the bonds or for return premiums, are entitled to share as policy holders in the special trust fund,—similarly to claimants mentioned in paragraph (a) above. See the *Aetna* case, *supra*.

(g) Claims by sureties on bonds issued by the company as principal, are not claims of policy holders, and not entitled to share in the fund. These claims are claims based on agreements, express or implied, to reimburse the surety,—not on policies of insurance. Whether or not such claims, if made on the basis of assignments taken from the obligees of the bonds, would be entitled to share in the fund, would depend on the nature of the agreement between Fidelity and such surety,—whether it was or was not an agreement to share the risk, (similar to the re-insurance contracts mentioned in paragraph (e) above).

(h) Claims by holders of the company's bonds guaranteeing payment of principal and interest of real estate bond and mortgage obligations of third party obligors, would seem clearly to fall in the class of "policy holder" claims entitled to share in the special trust fund. So also as to the claims of holders of the company's guaranties of notes of third parties. It seems immaterial that these guaranties are in the form of endorsements upon the notes instead of in the form of a special bond or insurance policy. It is the substance, not the form, which must control; and so considered these claims are claims of "policy holders."

5. Since the aggregate amount of claims of "policy holders" allowed as valid claims, is greatly in excess of the amount of the special trust fund, the claimants entitled to share in such fund must share therein *pro rata*,—all receiving the same percentage of their respective claims. The statute gives no preferential right to any class of policy holders; neither does the trust agreement or declaration; and no claim has been made by any party for any such preference.

6. The policy holders who receive partial payment of their claims out of this special trust fund will be entitled to prove, maintain and receive payment out of the general assets of the company on the basis of claims for the net amount remaining due them after deducting from their original claims the respective amounts received from the special trust fund (or from any other special security they may have). *Butler* v. *Commonwealth Tobacco Co., 74 N. J. Eq. 423.*

A dividend of ten per cent. has already been paid out of the general assets of the company, to *all* creditors whose claims have been allowed as valid, on the basis of the total amount of their respective claims. In the case of creditors who are entitled to share in the special trust fund, adjustment should be made by the liquidator in the course of future distribution, to conform to the rule above stated.

7. No other creditors are entitled to rights in this special trust fund ahead of the *pro rata* rights of the policy holders. No such claim has been made by any creditor, nor any facts presented which would warrant any other conclusion. Of course the cost and expense of the actual liquidation and administration of this particular fund as such, must first be paid out of the fund, and the distribution to policy holders based on the net balance of the fund thereafter remaining.

8. No preference should be given, in the distribution of this trust fund, or any portion thereof, to policy holders of this or any other state. No contrary claim is made by any creditor; and no facts are shown which would warrant any different conclusion. *Cf.* the discussion in paragraph 1 hereof.

9. The special trust fund is chargeable with the particular expenses of its own administration, as stated in paragraph 7 hereof, but is not· chargeable with any share of the expense of administration of the general assets. This is particularly true, since in the instant case the value of the general assets has increased during the liquidation period, by an amount in excess of the expense of administration of such general assets.

10. New York policy holders are entitled to share in the special trust fund *pari passu* with New Jersey and all other policy holders; and the determination of the New York liquidator as to which creditors are such policy holders and entitled so to share, is binding upon the New Jersey commissioner-liquidator. This is the effect of the contract between the New York and the New Jersey liquidators, approved by the courts of both states. The same thing is true as to the claims of creditors from Pennsylvania and Minnesota. No contrary contention is made by any party.