PEERLESS INSURANCE COMPANY, Appellant, v. MANSON, Commissioner of Insurance, Respondent.

*April 28—June 1, 1965.*

For the appellant there were briefs by *Petersen, Suther-land, Axley & Brynelson,* and oral argument by *Eugene O. Gehl,* all of Madison.

For the respondent there was a brief by *Charne & Tehan* of Milwaukee, and oral argument by *Irvin B. Charne.*

WILKIE, J. The sole issue presented on this appeal is whether a foreign stock insurance company, by reinsuring a portion of its risks with a Wisconsin mutual insurance company, becomes a policyholder-member so as to be liable for assessment.

It is conceded that the reinsurance treaties were silent on whether Peerless was a "policyholder" or "member" and on the entire subject of what liability, if any, Peerless had for

an assessment by Federal. Any liability of Peerless for the instant assessment did not arise by contract but must be imposed by the provisions of ch. 201, Stats. 1957,[1] which deal with insurance companies in general. In *Pella Farmers Mut. Ins. Co. v. Hartland Richmond Town Ins. Co.*[2] this court very recently held that one town mutual company which had reinsured another was required to assess the reinsured company. Respondent contends that the rationale of *Pella* controls here and thus the crucial question is whether or not *Pella* is distinguishable.

In *Pella*, the court found liability for an assessment on the part of the reinsured town mutual impliedly imposed under the provisions of ch. 202, Stats., dealing with town mutual companies. The court stated:

"Nowhere does the statute expressly make a reinsured company a member of a reinsurer town mutual, nor provide that a reinsured company shall be subject to assessment. If that be the law, it is reached only by construction.

"Ch. 202, Stats., deals with three types of situations where one is insured by another: (1) A town mutual agrees to indemnify a property owner for loss of property; (2) a town mutual agrees to indemnify another company for losses on risks of the latter; (3) a reinsurance corporation agrees to indemnify one of its member town mutuals for losses on risks of the latter. In situation (1), the statute explicitly provides that the insured property owner is a member of the town mutual and is subject to assessment. In situation (3), the statute explicitly provides that the reinsured town mutual is a member of the reinsurance corporation, and quite clearly makes it subject to assessment. In situation (2), however, a conclusion that a reinsured company is a member of a reinsurer town mutual, and subject to assessment by it can only be reached by according great importance to

---

[1] All references to provisions of ch. 201 herein are to the Revised Statutes of 1957, the year when the contracts of reinsurance were made.

[2] (1965), 26 Wis. (2d) 29, 132 N. W. (2d) 225.

keeping the insurance contract relationship between the parties in situation (2) consistent with the relationship in situations (1) and (3)." [3]

In finding authority for the assessment in ch. 202, Stats., the court stated:

"Thus the premiums received by a town mutual for insurance are only the primary resource out of which losses are paid. The ultimate reservoir consists of the resources of its members. If the premiums charged do not produce sufficient funds to pay losses of one or more members, then all the members are obligated to provide additional funds sufficient to do so. But if the town mutual has reinsured risks of another company, and losses outrun the collection of premiums, is the entire deficiency to be made up by property-owner members, or is the reinsured company to share the burden? Are the property-owner members of the reinsurer town mutual to be the insurers of the risks of the reinsured company without the mutuality which applies among all insureds with respect to the ordinary risks?

"It seems to us most logical and most in accord with the framework of ch. 202, Stats., that each reinsurance contract should be treated as an additional policy of insurance issued by the reinsurer town mutual, and the reinsured company as a member of the reinsurer, subject to assessment." [4]

And the court concluded:

"We are persuaded that a construction that the reinsureds are members and subject to assessment is more consonant with the statutory pattern of unlimited mutuality which was fundamental to the town mutuals as originally authorized." [5]

In *Pella,* the statutory requirement that each town mutual policyholder-member subjects himself to unlimited liability for assessment by his company,[6] and the statutory require-

[3] Id. at page 33.
[4] Id. at page 35.
[5] Id. at page 40.
[6] Secs. 202.09–202.11, Stats.

ment that each town mutual becomes a policyholder and a member of a town mutual reinsurance company with which it reinsures,[7] prescribed a pattern which lead logically to construing ch. 202, Stats., so as to make a town mutual company a policyholder and member of another when it becomes reinsured for part of its risks, and thus to make it subject to an assessment by the reinsuring town mutual.

But in the case at bar, although ch. 201 provides that each policyholder "shall be liable for a pro rata share of losses and expenses incurred during the time the member has been a policyholder" if the liability of all members is not limited by law,[8] the chapter permits a limitation which must be expressed in the articles of a mutual insurance company (and in every policy), limiting the liability of members in terms of "a specified number of times the annual premium." [9] Both the articles of incorporation and bylaws of Federal limit the liability of any member to an assessment equal to an additional annual premium.[10] Where liability is limited "the limitation must be expressed in every policy," [11] and nowhere in ch. 201 are the terms "policyholder" or "mem-

---

[7] Secs. 202.15, 202.18, Stats. See also *Wisconsin Town Mut. Reinsurance Co. v. Calumet County Mut. Fire Ins. Co.* (1937), 224 Wis. 109, 271 N. W. 51.

[8] Sec. 201.02 (3) (d), Stats. 1957.

[9] Sec. 201.02 (5) (c), Stats. 1957.

[10] Sec. 1, art. III, Amended Articles of Incorporation of Federal Mutual Casualty Company: "This Company shall be a Mutual Insurance Company without capital stock, in which the contingent mutual liability of the members is limited to one additional annual premium."

Sec. 1, art. I, Amended By-Laws of Federal Mutual Casualty Company: "Every person, corporation, association or partnership insured by this Company shall be a member thereof and have one vote. The contingent liability of each member is limited to one additional annual premium."

See also sec. 201.22, Stats. 1957, and *Oscar Mayer & Co. v. Manson* (1963), 19 Wis. (2d) 521, 120 N. W. (2d) 683.

[11] Sec. 201.02 (5), Stats. 1957.

ber" defined. Although the term "policy" is defined as including "every kind and form of contract of insurance" [12] there is no express provision identifying a reinsurance treaty as a form of insurance contract. Ch. 201 authorizes a commercial mutual insurance company to write a reinsurance treaty under which it assumes part of the risks of a stock insurance company on nonassessable policies which that company issues. [13] The chapter does not specifically subject such a reinsured stock company to assessment by the reinsuring commercial mutual insurance company; neither does it specifically make such a company a policyholder-member of the reinsurer; nor does it equate reinsurance with insurance.

Peerless urges that there is a great difference between "reinsurance" and "insurance." It argues that in ch. 201, in at least 13 sections, the legislature alludes to "reinsurance" [14] (in one form or another), indicating a legislative intention to treat reinsurance differently from insurance. Moreover, Peerless cites authorities in which reinsurance is recognized as differing from insurance, *e.g.*, insurance is a contract of direct, original insurance, insuring the original applicant, whereas reinsurance is a contract insuring the insurer of the original applicant; a reinsurance contract is always a contract of indemnity, while an insurance contract may or may not be a contract of indemnity; reinsurance contracts are a practical method whereby the original insuring company takes another company into partnership on a particular risk. [15] Peerless also contends that another

---

[12] Sec. 201.01 (3), Stats. 1957.

[13] Secs. 201.16 and 201.27, Stats. 1957.

[14] Secs. 201.03 (8), 201.03 (8) (a), 201.03 (8) (b), 201.05 (2m), 201.16 (1), 201.16 (2), 201.18 (1), 201.18 (2), 201.18 (3), 201.185 (2), 201.27, 201.31, 201.39 (12), Stats. 1957.

[15] *Aetna Casualty & Surety Co. v. International Re-Ins. Corp.* (1934), 117 N. J. Eq. 190, 175 Atl. 114. Other cases which recognize differences are: *Cunningham v. Republic Ins. Co.* (1936), 127

purpose of reinsurance is to relieve strains on surplus. There are also fundamental distinctions in operations. An individual purchases any of the types of ordinary insurance issued by a mutual by filling out a policy application and paying a set premium. With reinsurance, the terms of and the premiums to be paid for the contract result from arm's-length negotiations between the parties.[16] Furthermore, the reinsured, rather than the reinsurer, investigates, settles, and litigates claims.

On the other hand, respondent argues that reinsurance falls within the definition of insurance as "a contract whereby one party agrees to wholly or partially indemnify another for loss or damage" as set forth in *Shakman v. United States Credit System Co.*[17] Respondent also contends that reinsurance is insurance in the very nature of mutual insurance where each member of a mutual assumes the dual role of insurer and insured, contributing by means of premiums and assessments to a fund from which losses and liabilities are paid.[18]

It is unnecessary for the decision in this case for us to rule on these opposing contentions as to the similarity or differences of "reinsurance" and "insurance." We need only conclude that as far as ch. 201 is concerned, the legislature

---

Tex. 499, 94 S. W. (2d) 140; *Stradley v. Southwestern Life Ins. Co.* (Tex. Civ. App. 1960), 341 S. W. (2d) 195; *Bayonne D. C.-Vera Democrazia Society v. Bankers Nat. Life Ins. Co.* (1932), 10 N. J. Misc. 632, 160 Atl. 767; *Royal Ins. Co. v. Vanderbilt Ins. Co.* (1899), 102 Tenn. 264, 52 S. W. 168.

[16] The insurance commissioner has not adopted any rules in regard to reinsurance, while, on the other hand, insurance—particularly in regard to rates—is highly regulated.

[17] (1896), 92 Wis. 366, 374, 66 N. W. 528. Reaffirmed in *Sims v. Manson* (1964), 25 Wis. (2d) 110, 114, 130 N. W. (2d) 200.

[18] *Seamans v. Millers' Mut. Ins. Co.* (1895), 90 Wis. 490, 63 N. W. 1059; *Kennan v. Rundle* (1892), 81 Wis. 212, 51 N. W. 426; 2 Couch, Insurance (2d ed.), p. 166, sec. 19.14; 29 Am. Jur., Insurance, p. 504, sec. 89; 44 C. J. S., Insurance, p. 644, sec. 104.

treated reinsurance differently from insurance. As further evidence that the legislature intended a difference in treatment it is not unreasonable to conclude, under the *expressio unius est exclusio alterius* rule, that in view of the repeated references to "reinsurance" in the chapter in conjunction with the clear requirement of sec. 201.02 (3) (d), Stats. 1957 (that an individual who holds a policy in a mutual company is liable for assessment), the legislature did not intend a reinsured stock company to be a policyholder-member and assessable.

Peerless was not regarded as a policyholder-member, received no statements, reports or notices of any kind from Federal; Peerless was unrepresented on any meetings, never received proxy authorizations, never cast a vote,[19] and never received any distribution or dividend from Federal.[20] In each instance the facts regarding Peerless with respect to Federal were like those of Hartland with respect to Pella, and these facts did not prevent the court from holding that Hartland was a policyholder-member of Pella. But in *Pella,* these facts were all in the presence of a pattern of unlimited mutuality reflected in the statute and underlying the operation of town mutuals. No such pattern is present here.

Because of differences between the two chapters, the construction of ch. 202 in *Pella,* preserving the concept of mutuality in connection with reinsurance by a town mutual,

---

[19] Sec. 201.02 (3) (d), Stats. 1957, which gives to each member the right to vote.

[20] It should be pointed out that the trial court relied on the following paragraph in the treaty to conclude that Peerless was a member because able to share in profits. "If, at any time under this treaty, the sum of the loss reserves, plus the unearned premium reserve, as required by any governmental authority, exceeds the amount of funds held by Peerless then the Reinsurer agrees to place the Peerless in funds to the extent of such excess." Both parties agree that this was error, and that this provision related only to the retention of sufficient funds to meet losses and unearned premium reserves.

does not govern the construction of ch. 201, nor require a similar result in the case at bar.

We conclude that a stock company that reinsures part of its risks with a commercial mutual as Peerless did here with Federal does not become a policyholder-member of Federal subject to assessment by Federal.

*By the Court.*—Judgment reversed.