**GREAT AMERICAN INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Defendant-Appellant,**

**and**

**Fairfield & Ellis, Inc., Defendant.**

**No. 181, Docket 72-1419.**

United States Court of Appeals, Second Circuit.

Argued Nov. 28, 1972.

Decided July 10, 1973.

Ernest E. Rosenberg, Rein, Mound & Cotton, New York City, for plaintiff-appellee.

Murray L. Lewis, Sheila L. Birnbaum, Howard Lester, Emile Z. Berman and A.

Harold Frost, New York City, for defendant-appellant.

Before WATERMAN, FRIENDLY and HAYS, Circuit Judges.

WATERMAN, Circuit Judge:

██ Appellant, Fireman's Fund Insurance Company (Fund) defendant below, seeks reversal of an order entered in the district court granting plaintiff's motion for summary judgment. Plaintiff, Great American Insurance Company (Great American) originally commenced suit on a contract of reinsurance [1] in the New York State Supreme Court for New York County, alleging that defendant Fund was liable to it on that contract in the sum of $139,710.33 plus interest and costs. The sum sued for represented 20% of the payments which Great American had paid to the City of Somerville, Massachusetts, under a policy of fire insurance for losses the policyholder had incurred in a fire which destroyed a city school building on November 6, 1968. The action was promptly removed to the United States District Court for the Southern District of New York on the ground of the diversity of citizenship of the parties. In its answer to the action Fund alleged that the contract of reinsurance, which was represented by a binder, had been effectively canceled as of July 22, 1968, more than three months prior to the November 6 fire, by a letter of cancellation dated July 11, 1968 and mailed to Fairfield & Ellis, Incorporated (Fairfield), Great American's Massachusetts agent, and also by a telephone conversation between Mr. Martin Roach, Resident Secretary of Fireman's Fund in Boston, and Mr. Rudolf Komenda, Underwriting Manager of the Fire Department of Fairfield, occurring on or about July 8, 1968.[2] After partial discovery had been completed by the parties, Great American moved for summary judgment under Rule 56(c), Fed. R.Civ.P., on the ground that no genuine issue as to any material fact remained and that Great American was entitled to a judgment as a matter of law.[3] It set forth that neither the July 11 letter nor the July 8 telephone conversation effectively canceled the reinsurance because neither the letter nor the telephone call conformed to the statutory requirements of the cancellation term contained in the Massachusetts Standard Form fire policy (175 MGL § 99) which we have set

---

1. "Reinsurance" is an agreement to indemnify the assured, partially or altogether, against a risk assumed by it in a policy issued to a third party. Friend Bros. v. Seaboard Surety Co., 316 Mass. 639, 56 N.E.2d 6 (1944).

2. In its original action in the New York State Supreme Court, Great American had also joined Fairfield, a Boston insurance broker, as a secondary defendant, alleging that if Fund was not held liable to Great American because its reinsurance binder had been canceled, Fairfield was liable to it for breach of contract, negligence, and tortious misconduct. Within two months of the suit's commencement the three parties had joined issue. Somewhat later Fund moved to amend its answer so that it, too, might plead a contingent claim against Fairfield. It alleged that if it should be determined that the reinsurance contract had *not* been canceled Fairfield would be liable

to Fund for the amount of Great American's recovery against Fund. This motion was granted. Although there has been no adjudication of these contingent claims against Fairfield, the district court entered a determination under Fed.R.Civ. P. 54(b) that there was no just reason for delaying the entry of judgment in favor of Great American against Fund.

3. Inasmuch as the reinsurance contract which is the subject of the litigation was executed in Massachusetts and the primary loss to the City of Somerville occurred in Massachusetts we apply Massachusetts case law and statutory law wherever possible. See, e. g., John Hancock Mutual Life Insurance Co. v. Yates, 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106 (1936); New York Life Insurance Co. v. Federal National Bank of Shawnee, Oklahoma, 143 F.2d 69 (10th Cir. 1944); Standard Accident Insurance Co. v. Turgeon, 140 F.2d 94 (1 Cir. 1944).

forth in the margin[4] which provides that ten days' written notice of cancellation had to be given "to the insured" and this notice had to contain a statement concerning the return of excess premiums. Great American also pointed out in its affidavit in support of its motion that the July 11 letter had been mailed to Fairfield rather than "to the insured" itself (Great American) and that the letter did not contain a statement that any excess premiums held by the insurer would be returned to the insured. Great American also argued that the letter was not a "notice" at all because it did not clearly inform the insured that the policy was being terminated. Finally, as to the telephone conversation, Great American pointed out that under the standard policy ten days' *written* notice was required.

In reply to the motion for summary judgment Fireman's Fund contended that under Massachusetts law (MGLA, ch. 175, § 2A)[5] the cancellation requirements of the standard policy were not applicable to this contract of reinsurance. Moreover, it argued that, even if the court should find that the requirements of the standard policy were applicable, the July 11 letter, mailed to and received by Fairfield, conformed in every particular to the requirements of the standard policy. Finally, citing judicial authorities, it argued that written notice sent to and received by an agent of the insured clothed with the authority, actual or apparent, to receive the notice, was sufficient to bind the agent's principal, the insured.

The judge below found that the cancellation requirements of the standard policy applied to the contract of reinsurance at issue, and that the July 11 letter did not conform to the cancellation requirements because it did not contain a statement concerning the return of excess premiums. He therefore held that Fund was liable on the uncanceled contract, and granted plaintiff's motion for summary judgment. Fund appealed this decision, and on appeal contends that we should reverse the order below and remand the case to the lower court for further trial proceedings or, alternatively, should reverse and order a grant of summary judgment in defendant's favor. For the reasons set forth herein we conclude that the order granting plaintiff's motion for summary judgment must be reversed and that we must remand the case to the lower court to conduct further proceedings to permit of further exploration of factual issues we find could be material to decision and which have not yet been resolved.

▆▆▆ The contract of reinsurance involved in this suit was evidenced by a binder of reinsurance[6] issued by Fairfield on Fund. As a dual agent for both Great American and Fund, Fairfield,

---

4. The standard policy cancellation provision, in pertinent part, read as follows:
   This policy may be cancelled at any time by this company by giving to the insured and to any mortgagee to whom this policy is payable a ten days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand. 175 Massachusetts General Laws § 99.

5. MGLA, ch. 175, § 2A provides:
   Status of Reinsurance Contracts
   Contracts of reinsurance shall be deemed contracts of insurance as defined in Section 2, and authority to make contracts of insurance shall include authority to make contracts of reinsurance covering the same classes of risks, but the hazards under such contracts shall be deemed distinct in nature from the hazard originally insured. *No provision of law relative to the form of insurance policies shall apply to contracts of reinsurance unless made specifically applicable thereto.* (Emphasis added).

6. A "binder" of insurance or of reinsurance is a short method of issuing for the parties' convenience a temporary policy covering a described risk in return for a "premium" payment to the insurer by the insured paid or to be paid.

after placing the Somerville policy with Great American, immediately reinsured 20% of the liability under it with Fund. Similarly, Fairfield reinsured 60% of Great American's liability in 20% allotments with three other reinsuring insurance companies. Because of various delays after the issuance of Fund's binder, the binder was never followed by the issuance of a full policy. It is clear under Massachusetts law that the policy which would have issued to replace the binder did not have to be in the standard form (see n.5). However, if the parties contemplated that the standard policy would be issued, the applicable terms therein will be read into the binder. See Republic Insurance Company v. French, 180 F.2d 796 (10 Cir. 1950); Fisher v. Underwriters at Lloyd's London, 115 F.2d 641 (7 Cir. 1940); 1 Couch on Insurance § 91; 29 Am.Jur. 2d § 143 at 158. The three other binders issued by Fairfield reinsuring 60% of Great American's liability under the City of Somerville policy were all subsequently covered by policies written in the standard form. Also, a representative of Fairfield stated in his deposition that the standard policy would have been used. While it thus seems likely that a standard policy, with a reinsurance rider attached to it, was contemplated, this is a factual issue which would not have been disposed of by summary judgment if it were determinative.[7]

However, we think it is not. Even if the notice of cancellation sent by Fireman's Fund had to conform to the requirements of the standard form, these requirements must be here construed in accordance with common sense and reason. Inasmuch as it is undisputed that Great American paid no premiums to Fund prior to the time Fund allegedly canceled the binder per the July 11 letter, Fund was not required to include in a letter of cancellation a meaningless statement concerning the return of excess premiums. See Morton Furniture Co. v. Dubuque F & M Insurance Co., 287 Mass. 170, 191 N.E. 637 (1934); General Discount Corporation v. State Assurance Co., Limited, 129 F.2d 92, 94 (5 Cir. 1942); 45 C.J.S. Insurance § 451; 127 A.L.R. 1342. Accordingly, we hold that the court below erred in setting forth in its written opinion that Fund was required to include such a statement; and Great American now concedes this point on appeal.

Under the statutory provision dealing with the cancellation of insurance policies in Massachusetts (MGLA, ch. 175 § 187C)[8] the company's notice of cancellation must be delivered "in hand to the insured," and under the standard policy it must be delivered "to the insured."

---

7. Fund argues that since the cancellation provision speaks of notice to an insured rather than to a reinsured "the specific words of the standard form have no application . . . ." We disagree. Common sense and practical usage teach that Great American was an "insured" of Fund. We find equally unpersuasive another argument advanced by Fund that the Massachusetts Legislature which enacted the standard form never intended it to apply to reinsurance contracts between insurers. Although this may be so, if insurance companies dealing with one another also choose to incorporate into their contracts the requirements of the standard form, there is nothing to prevent them from doing so.

8. In pertinent part § 187C reads as follows:

§ 187C. Cancellation, How Effected.
  A company issuing any policy of insurance which is subject to cancellation by the company shall effect cancellation by serving the notice thereof provided by the policy and by paying or tendering, except as provided in this and the following section, the full return premium due thereunder in accordance with its terms without any deductions. Such notice and return premium, if any, shall be delivered in hand to the insured, or be left at his last address . . . or be forwarded to said address by registered mail . . . .
This section speaks of policies of insurance and makes no mention of policies of reinsurance. Nevertheless, assuming arguendo that it does not apply to reinsurance policies, the standard policy requires that a notice of cancellation be delivered "to the insured."

These requirements must be interpreted as meaning the same thing. It is undisputed that Fairfield actually received the July 11 letter. However, it is also undisputed that Fairfield did not send the letter or a copy of it to Great American, did not inform Great American that it had received the letter, did not send any other notice to Great American concerning the cancellation, and did not purchase new insurance in another company to replace the allegedly canceled policy. Citing MGLA, ch. 175, § 187C, Great American argues that the July 11 letter did not effect cancellation because it was not delivered "in hand to the insured." Great American reads this section too literally. Although we are not familiar with any Massachusetts cases which construe this section, we would anticipate that the Massachusetts courts would hold that an actual delivery of the notice to an authorized agent of the insured would be a delivery "to the insured." This would be the interpretation most consistent with general jurisprudence on the subject and would conform with the accepted practice in most jurisdictions. See Schwaback & Company v. Gulf Shipside Storage Corp., 173 F.Supp. 105 at 110 n. 10 (E.D.Louisiana, 1959), rev'd on other grounds 276 F.2d 209 (5 Cir. 1960), cert. denied, 364 U.S. 830, 81 S.Ct. 69, 5 L.Ed.2d 57 (1960); 29 Am.Jur.Insurance § 389.

Here the lower court, in granting the motion for summary judgment, made no findings relative to the scope of authority, actual or apparent, of Fairfield. As we examine the record before us, we do not find enough evidence, one way or the other, to enable us to conclude as a matter of law that Fairfield had the authority, or did not have the authority, to receive the notice of cancellation. The contract of agency between Great American and the insurance broker is silent on the matter. More-

over, even though Fairfield admittedly had the authority to procure reinsurance for Great American, it does not follow, as a matter of law, that Fairfield also had the authority to receive a notice of the cancellation of that reinsurance. See Grace v. American Central Insurance Co., 109 U.S. 278, 3 S.Ct. 207, 27 L.Ed. 932 (1883); White v. Insurance Company of New York, 93 F. 161 (1 Cir. 1899); White v. Connecticut Insurance Company, 120 Mass. 330 (1876). Great American would have us rule as a matter of law that an agent of the insured, such as Fairfield, does not have the authority to accept a notice of cancellation unless it immediately protects its insured by purchasing new insurance to replace the canceled policy, and it is admitted that Fairfield did not so protect Great American. Suffice it to say that Great American has not cited any authorities which support this position and we have found none. The correct rule would appear to be that if the agent has the authority to substitute policies, whether or not he exercises the authority, a notice given to the agent is a sufficient notice to the insured. See 45 C.J. S. Insurance § 450(2).

In short, the question of the nature and extent of Fairfield's authority is a factual question which it would seem the trier of fact must decide after a full evidentiary hearing in the court below.

Great American also claims that even if it is assumed that Fairfield had authority from Great American to receive any notice of cancellation the July 11 letter was not a "notice of cancellation," but a communication from Fund, as Fairfield's principal, to Fund's own agent. Pointing out that Fairfield was a dual agent for both Great American and Fund,[9] Great American argues that the letter should be viewed as instruction from Fund to its agent, Fairfield, to cancel certain policies upon which Fund

---

9. Although the written agency contract between Fireman's Fund and Fairfield was canceled as of July 1, odds and ends associated with the termination of the agency needed to be "cleaned up."

Though it would seem Fairfield must have continued to act as Fund's agent during this period, Fund does not admit this relationship.

was committed, an instruction which Fairfield failed to carry out.

The letter reads as follows:

Marty Roach spoke to you recently about outstanding fire binders and indicated to you that we wished to have all of them marked off. We are enclosing a list of binders which are presently outstanding according to our records. We are considering all of these as terminated by no later than July 22, 1968.

Attached to the letter was a list of Fund's outstanding binders placed through Fairfield, setting forth the name and address of each insured and the amount of coverage and the effective date of each binder. The Great American binder here in suit was the last entry on the list, a list containing 23 entries.

The express language of the letter seems somewhat ambiguous. In the first sentence Fund is stating that it "wished" to have all the outstanding binders "marked off" and therefore this would seem to suggest an instruction from Fund to Fairfield. However, the third sentence, stating that Fund was "considering" the binders "terminated by no later than July 22, 1968" could seem to suggest that Fund was giving Fairfield, as agent for all the insureds on the list, ten days' notices of cancellation of all 23 binders. Although ordinarily we would be disposed to interpret the language of an ambiguous notice in favor of the insured and against the insurer, we consider that this general rule should not apply when both insured and insurer are "large insurance companies long engaged in far flung activities in that field of economic activi-

ty." Boston Insurance Company v. Fawcett, 357 Mass. 535, 258 N.E.2d 771 (1970). Rather, as with the question of the scope of Fairfield's authority, this, too, should be dealt with as a factual question to be decided after an evidentiary hearing in the court below during which parol evidence as to the course of dealing Fairfield had with both insurers prior to the events in suit may be introduced on these issues.

We reverse the grant of summary judgment and remand to the court below for further proceedings there on the issues relevant to the scope of Fairfield's authority as agent for both of the parties to this appeal and as to the intent of the July 11 letter and other relevant matters.

Reversed and remanded for further proceedings [10] not inconsistent with this opinion.

---

10. In connection with the motion for summary judgment extensive affidavits with numerous exhibits attached thereto were filed in support of and in opposition to the motion. Written interrogatories had been propounded by each party to the other which were answered in due course. Depositions were taken, but appellant Fund alleged they had not been completed when the motion was granted. Thus ap-

pellant maintains as one ground of appeal that the grant of the motion was premature. We apprehend that upon remand the parties will continue to engage in pretrial activity, and so we find it unnecessary to decide whether the grant of summary judgment to Great American should be set aside on the additional ground that discovery had not been completed when the judgment order was filed.