**FOREMOST LIFE INSURANCE COMPANY, Appellant,**

v.

**DEPARTMENT OF INSURANCE, State of Indiana, Liquidator of Keystone Life Insurance Company, Appellee.**

**No. 980S373.**

Supreme Court of Indiana.

Sept. 24, 1980.

C. Wendell Martin, Bredell, Martin, McTurnan & Meyer, Indianapolis, for appellant.

Karl J. Stipher and Charles T. Richardson, Baker & Daniels, Indianapolis, for appellee.

ON PETITION TO TRANSFER

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from an opinion and judgment of the First District Court of Appeals. *See Foremost Life Insurance Co. v. Dept. of Ins.*, (1979) Ind.App., 395 N.E.2d 418. Foremost Life Insurance Company took an interlocutory appeal from an adverse order in the trial court denying it the status of a Class III creditor under Ind.Code § 27–1–4–15 (Burns 1977 Supp.), in the statutory liquidation of Keystone Life Insurance Company. Foremost contends that by virtue of a certain life and disability reinsurance

treaty entered into with Keystone, Foremost acquired an insurance interest that the legislature intended to be preferred over general creditors. The trial court found that Foremost did not come under any of the designated categories of Class III and that their claim falls under Class IV as a general creditor.

The priority statute in issue, § 27–1–4–15, provides:

Claims against a company declared to be insolvent under the provisions of this chapter shall be satisfied in the following order of priority:

(1) Expenses of administration.

(2) All wages actually owing to its employees for services rendered within three (3) months prior to the commencement of such proceeding, not exceeding three hundred dollars ($300) to each employee, which shall be paid prior to the payment of any other debt or claim and subject to the direction of the court, shall be paid as soon as possible after liquidation has been commenced.

(3) Claims by policyholders, beneficiaries, and insureds arising from and within the coverage of and not in excess of the applicable limits of insurance policies and contracts issued by the company, and liability claims against insured which claims are within the coverage of and not in excess of the applicable limits of insurance policies and insurance contracts issued by the company and claims of the Indiana Insurance Guaranty Association established under IC 27–6–8 and any similar organization in another state.

(4) All other claims.

When Keystone became insolvent it fell upon Foremost, under its re–insurance treaty, to step in and meet the obligations re–insured by Keystone, including but not limited to, claims under the insurance policies and contracts issued by Foremost and re–insured by Keystone that comprise some of the enumerated statuses under Class III of the above statute.

The Court of Appeals reversed in part the judgment of the trial court, by holding that where Foremost paid claims of the insurance consumers, such as the policyholders' beneficiaries and insureds under Class III of the priority statute, in those cases, Foremost had the equitable right of subrogation and therefore had a preferred right over general creditors. The Court of Appeals further held that after the enumerated statuses in Class III were paid, Foremost would then come under Class III to receive any assets remaining, to pay their subrogated claims. It was generally agreed by all parties that this claim by Foremost, which amounted to about $1,000,000, would exhaust all remaining assets of the liquidation and all other general creditors would receive nothing. We find the Court of Appeals reasoning to be in error, and accordingly vacate the opinion of the Court of Appeals and affirm the trial court.

The facts pertinent to the resolution of the issue before us were stipulated to by the parties below. Keystone is a domestic stock insurance company that has no authority to conduct insurance business beyond Indiana borders. From approximately June, 1973, to April, 1978, Keystone sold group, credit life and disability insurance directly to Indiana consumers. These direct policy holders of Keystone are not parties to this appeal. The re–insurance treaty was designed to enable Keystone to conduct insurance business in states other than Indiana. Foremost is a Michigan stock insurance company that holds certificates of authority to write insurance in every state with the exceptions of New York and Hawaii. Part of Foremost's business is to sell credit life and disability insurance. Central State Agency, Inc., (CSA) is a Michigan corporation doing business as a general insurance agent. Keystone and Central State Agency, Inc., were controlled by the same individuals. In September, 1972, CSA entered into an agent's agreement with Foremost, whereby CSA agreed to sell Foremost insurance products in states other than Indiana. CSA specialized in credit life and disability insurance. The re–insurance treaty at issue here was entered into between Foremost and Keystone on July 1, 1973. The provisions of the treaty are described in the following stipulations:

8. Under Article I of the Treaty, Foremost "ceded" (transferred) to Keystone credit insurance business originally generated by CSA for Foremost outside Indiana under the Agent's Agreement between CSA and Foremost. Keystone "accepted" as reinsurance Foremost's liability under such credit insurance. In other words, Keystone undertook financial and administrative obligations which Foremost had under its outstanding credit insurance certificates to the policyholders (consumers–debtors) of Foremost outside Indiana. Initially, Foremost collected the premiums paid by the policyholders less CSA's agent's commission), kept for itself as a fee 2% of the net written premiums, and paid the remainder to Keystone. With that money, Keystone was to set up reserves, pay claims and litigation costs, and take care of administrative expenses. Later, CSA collected the premiums for Foremost, deducted CSA's agent's commission, paid Foremost the 2% fee, and paid the remainder to Keystone.

9. Foremost's policyholders were not formally informed of the Treaty or of Keystone's obligations to Foremost under the Treaty. Foremost remained legally liable to its policyholders under the credit insurance in the event Keystone failed to perform its obligations to Foremost under the Treaty. There is no privity of contract between Keystone and the Foremost policyholders.

Under the treaty, then, Foremost transferred to Keystone credit insurance business originally generated by CSA for Foremost outside Indiana under the agent's agreement between CSA and Foremost. The treaty meant that Keystone undertook financial and administrative obligations which Foremost had under its outstanding credit insurance certificates. CSA was paid an agent's commission for generating the business for Foremost, Foremost was paid a two percent fee, and Keystone received the remainder of the collected premiums. Under insurance parlance, Keystone was the re–insuror which undertook financial obligations of another insurance company, called the "ceding" or re- insured company,

on account of certificates of credit insurance issued originally by the other re–insured insurance company to the policyholders of the other company. It was also stipulated by the parties that Keystone did re–insurance business with several other companies but, for the years 1975, 1976, and 1977, more than fifty percent of Keystone's re-–insurance business was with Foremost. It appears, on the other hand, that the Keystone business was not a significant part of Foremost's total business during those years. Foremost is solvent and apparently able to pay its obligations, including those re insured by Keystone.

The precise question before us, then, is: should an insurance company, here Foremost, that has a re insurance treaty with another insurance company that is insolvent, here Keystone, get any priority under Indiana Code § 27 1 4 -15(3) in the insolvent company's limited assets; or should the re insured insurance company instead be treated merely as a Class IV general creditor? This question must be resolved by interpreting the intention of the legislature. Prior to the enactment of Indiana Code § 27 1 4 15, it was generally recognized that the ordinary insurance consumer was not given a preference under the insolvency of a carrier. The typical insurance consumers, who are the policyholders, beneficiaries, and insureds, had no preference over any other creditors of the insolvent carrier. In *Cummings Wholesale Elec. Co. v. Homeowners Ins. Co.*, (7th Cir. 1974) 492 F.2d 268, *cert. denied*, 419 U.S. 883, 95 S.Ct. 149, 42 L.Ed.2d 123, the Seventh Circuit Court of Appeals held that a preference could be created only by express legislative action. Such legislative action by the Indiana Legislature came about in 1977 with Ind.Code § 27 1 4 15 (Burns 1977 Supp.) It is clear that the Legislature intended to protect the typical insurance consumer by using the terms "policyholders, beneficiaries, and insureds."

In interpreting a statute we are to ascertain and give effect to the intent of the legislature. *State ex rel. Baker v. Grange*, (1929) 200 Ind. 506, 510, 165 N.E. 239, 240;

*Ervin v. Review Bd.*, (1977) Ind.App., 364 N.E.2d 1189, 1192; *Abrams v. Legbandt*, (1974) 160 Ind.App. 379, 388, 312 N.E.2d 113, 118; *Marhoefer Packing Co. v. Indiana Dept. of State Revenue*, (1973) 157 Ind.App. 505, 516, 301 N.E.2d 209, 214.

■■■■ In determining the legislative intent, the language of the statute itself must be examined, including the grammatical structure of the clause or sentence in issue. If possible, effect and meaning must be given to every word, and no part of the statute is to be held meaningless if that part can be reconciled with the rest of the statute. *Ervin v. Review Bd., supra; Marhoefer Packing Co. v. Indiana Dept. of State Revenue, supra.* Further, a statute is to be examined and interpreted as a whole, giving common and ordinary meaning to words used in English language and not over–emphasizing a strict literal or selective reading of individual words. *Combs v. Cook*, (1958) 238 Ind. 392, 397, 151 N.E.2d 144, 147; *Abrams v. Legbandt, supra.*

As the Court of Appeals pointed out, it was clearly the intention of the legislature to protect the ordinary insurance consumer whether he was entitled to proceeds or unearned premiums under the policies. The policyholder is the person who owns or holds the insurance policy, typically the one who pays the premium. Ind.Code §§ 27–1–2–3(*o*) and 27–1–12–27(2)(b) (Burns 1975). The beneficiary is normally the person who benefits financially upon the occurrence of an insurable event such as the death, disability or illness of the insured or the destruction of his property. Ind.Code § 27–1–12–28(6) and § 27–1–12–14. The insured is a person whose life, health, or property is being insured. All of these interests need not, but could be, held by the same person.

The concept of reinsurance was discussed in *Florida ex rel. O'Malley v. Department of Insurance*, (1973) 155 Ind.App. 168, 291 N.E.2d 907. The Court of Appeals explained:

"A reinsurance contract is a contract of indemnity whereby one insurer agrees to indemnify another insurer, wholly or partially, against loss or liability by reason of

a risk which the latter insurer has assumed under a separate and distinct contract as insurer of a third person. Such a reinsurance agreement protects the primary insurer from a risk which it has already assumed." [Citations omitted] *Id.* at 177, 291 N.E.2d at 912–13. *See Eagle Insurance Company v. Lafayette Insurance Company*, (1857) 9 Ind. 443. In the context of the primary insurer's insolvency, the Court in *O'Malley* concluded:

"Thus the reinsurance contract is totally distinct from, and unconnected with the original insurance policy. It is not binding on the policy holders of the reinsured company because they are not parties to the reinsurance contract and had no voice in its making.

. . . . .

The original insured has no interest in the reinsurance contract and the reinsurer is not bound by the provisions of the original insurance policies issued by the company being reinsured. . . ." [Citations omitted]

155 Ind.App. at 178, 291 N.E.2d at 913. *O'Malley* further provided that a reinsurance contract is primarily one of indemnity to the reinsured only, not against loss by hazard specified in the original policy, but against loss or liability by virtue of original contracts of insurance.

Other jurisdictions have considered the rights of reinsured companies as opposed to policyholder interests in insolvency proceedings and the difference between insurance and reinsurance. In *Aetna Casualty & Surety Co. v. International Reinsurance Corp.*, (1934) 117 N.J.Eq. 190, 175 A. 114, the court held that the reinsured company was not entitled to preferential participation in a statutory fund or deposit for policyholder interest. The court noted that there is "both a technical and an actual difference between the ordinary or usual contract of insurance and a contract of reinsurance whereby another insurance company is indemnified against all or part of liability on an ordinary or usual contract of insurance written by it." *Id.* at 202, 175 A.

at 121. The court reasoned that the legislature, in requiring deposits by the insurance company for the benefit and security of all policyholders of the company, did not intend to protect other insurance companies:

"This conclusion would be based upon, or fortified by, the reasonable presumption that the purpose of the legislature was to protect the general public--the ordinary citizens who bought 'policies' and who would have little or no opportunity to have or obtain knowledge as to the solvency or financial responsibility of insurance companies–by companies which might be irresponsibly or poorly managed; to require that there should always be a fund, for the protection of the citizens who bought policies, which could not be dissipated, encumbered, or diminished by reason of any improper or unskilled management of the company's business or assets."

*Id. See Peerless Ins. Co. v. Manson*, (1965) 27 Wis.2d 601, 135 N.W.2d 258; *In re New Jersey Fidelity and Plate Glass Ins. Co.*, (1937) 15 N.J.Misc. 384, 191 A. 475; *In re General Indemnity Corp. of America*, (1937) 274 N.Y. 510, 10 N.E.2d 523; *Cunningham v. Republic Ins. Co.*, (1936) 127 Tex. 499, 94 S.W.2d 140; *Shepherd v. Virginia State Ins. Co.*, (1917) 120 Va. 383, 91 S.E. 140.

■■ It is abundantly clear that the legislature could have included "ceding" companies along with policy holders, beneficiaries and the insureds, if such was their intention, and reinsurance contracts as well as insurance contracts, if they intended to include reinsurance under Class III. These are well understood terms and statutes in the insurance field and insurance law, and the legislature must be presumed to have considered them in drafting this statute. In fact, the legislature has specifically recognized the separate and distinct concept of reinsurance. Ind.Code § 27 1 9 7(a) (Burns 1975) states in part:

"As used in this article [27 1 9 1 27 1–9–15], the word 'reinsurance' shall be understood to refer to a legal transaction other than merger or consolidation by which one insurance company for a con-

sideration and on stated terms and conditions assumes all or a portion of the insurance, annuity and endowment risks or obligations of another insurance company."

This section then provides the unique procedure for the establishment of a reinsurance contract.

We think the contention of appellee Department of Insurance is well taken that Foremost is not an individual policyholder incapable of knowing the precise financial stature of the company behind the contract. Foremost is itself an insurance company which can and should protect itself in its dealings with other insurance companies. Any claims it has over the distributive assets of the insolvent Keystone will have to be shared on a pro rata basis with all other general creditors.

■ Finally, Foremost contends that it should be treated as a guaranty association and would, therefore, come under Class III of the statute. Stipulations of the parties, Number 13 and 14, were as follows:

13. Generally, a guaranty association is a statutorily created entity made up of insurers doing business in the state where the guaranty association is created. The guaranty association is typically governed by a board of directors elected by member insurers. The purpose of the guaranty association is to guarantee to the public that if a member insurer becomes insolvent, the guaranty association will step in and see that policy obligations of the insolvent insurer are paid. If that becomes necessary, members of the guaranty association are assessed and must pay the necessary amount, to see that policyholders are not hurt by a member insurer's insolvency.

14. Indiana has had a guaranty association for casualty insurance since the Indiana Insurance Guaranty Association Law of 1971, *IND.CODE* § 27 6 8 1, *et seq.* However, it was not until September 2, 1978, approximately 4 months after the Keystone rehabilitation proceeding began, that Indiana had a guaranty association for life and disability insurance of

the type written by Keystone. *See IND. CODE* § 27–8–8–1, *et seq.* The Indiana direct policyholders of Keystone are not protected by any Indiana guaranty association. Had *IND.CODE* § 27–8–8–1 *et seq.* been in effect when Keystone became impaired, the Indiana direct policyholders of Keystone would have been protected by the Indiana Life and Health Insurance Guaranty Association created by *IND.CODE* § 27–8–8–3. The policyholders of Foremost, whose certificates were reinsured by Keystone under the Treaty, are not entitled to any protection under the Indiana guaranty association statute. *See IND.CODE* § 27–8–8-1(b)(3).

Clearly Foremost does not meet the definition of a guaranty association. The reinsurance treaty here was not entered into for the primary purpose of protecting policy holders of insolvent companies, as is a guaranty association. The primary purpose of the treaty was to further the commercial interest of Keystone and Foremost. Further, as the Court of Appeals correctly pointed out, had a guaranty association been applicable to this insolvency proceeding, the Foremost insureds would not have been protected thereby. The parties' stipulation recognizes this. The purpose of a guaranty association is to obligate its members to protect Indiana policyholders.

The opinion of the Court of Appeals is vacated, and the judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

A Reinsurance Treaty between Foremost and Keystone was struck and Keystone agreed to reinsure the risks which Foremost had insured, growing out of certain life and health and accident insurance. The parties and indeed the courts which have discussed this treaty have given it the appellation of reinsurance agreement. When Keystone became insolvent, Foremost commenced to pay claims and perform the other servicing functions which Keystone had assumed under the agreement as well. Keystone held and continues to hold through its liquidator premiums paid by the policyholders of Foremost for insurance policies upon which such claims are based. The issue presented to the trial court and to this Court is whether Foremost as a claimant against Keystone in liquidation is entitled to the preference of a policyholder, beneficiary, or insured as specified in Ind.Code § 27–1–4–15, adopted in 1977, since amended, which provides in pertinent part:

"Priority of claims against insolvent company. Claims against a company declared to be insolvent under the provisions of this chapter shall be satisfied in the following order of priority:

\*       \*       \*       \*       \*       \*

(3) Claims by policyholders, beneficiaries, and insured arising from and within the coverage of and not in excess of the applicable limits of insurance policies and contracts issued by the company, and liability claims against insureds which claims are within the coverage of and not in excess of the applicable limits of insurance policies and insurance contracts issued by the company and claims of the Indiana insurance guaranty association established under IC 27–6-8 [27–6–8–1–27- 6 -8 19] and any similar organization in another state.

(4) All other claims."

In reading this provision it is at first evident that the class sought to be given preference is not limited to policyholders, but is extended to include beneficiaries and insureds as well. It is not limited to relationships growing out of insurance policies, but extends as well to those stemming from insurance contracts. The purpose of establishing this class of claimants is to subject the assets of insurance companies in liquidation to the fulfillment of their obligations to policyholders, beneficiaries and insureds arising from insurance policies and contracts, before subjecting them to the payment of other types of obligations. In so

doing, insurance type expectations are given preference over others and are therefore more likely to be fulfilled.

The definitions section of the statute states that insurance "means . . . an agreement by which one party . . . in consideration of a price paid, adequate to the risk, becomes security to the other against loss by certain specified risks . . . ." Ind.Code § 27–1–2–3. The reinsurance contract between Keystone and Foremost satisfies this definition and is therefore "insurance" within the meaning of that term as used in the statute. According to its provisions, in consideration of a price specified and paid, adequate to the risk, Keystone secured Foremost against the risks specified in the treaty. Furthermore, outside the four corners of the statute, reinsurance is generally considered to be a type of insurance. Black's Law Dictionary defines reinsurance in the following manner:

"A contract by which an insurer procures a third person to insure him against loss or liability by reason of original insurance. A contract that one insurer makes with another to protect the latter from a risk already assumed. It binds the reinsurer to pay to the reinsured the whole loss sustained in respect to the subject of the insurance to the extent to which he is reinsured." Black's Law Dictionary 1157 (5th ed. 1979)

Reinsurance is simply a risk spreading device utilized by insurance companies; it is a type of business insurance for insurance companies.

According to the same definition section an insurer "means a company . . . making any kind or kinds of insurance." Keystone is an "insurer" within the meaning of that term as used in this statute. This follows necessarily since it makes a kind of insurance, namely, reinsurance.

There is no definition of the term "insured" as used in Ind.Code § 27–1–4–15. However, for a statute to include reinsurance contracts within the meaning of "insurance" and to include companies engaging in making reinsurance within the mean-

ing of "insurer" and then exclude reinsured companies from the meaning of the term "insureds" would be unlikely and even unnatural. Certainly, there is to be found no language which expressly excludes reinsured insurance companies from the category of "policyholders, beneficiaries, and insureds".

The conclusion flows naturally upon consideration of these definitions and the text that the treaty between Keystone and Foremost was "insurance" and that Keystone was an "insurer" and that Foremost, the claimant against the liquidator, was an "insured". I would, therefore, conclude that Foremost's claim is a Class 3 claim as falling with the class of "claims by . . . insureds arising from and within the coverage of and not in excess of the applicable limits of insurance . . . contracts . . . issued by the company. . . ." To do otherwise is to ignore the meaning of the words used in the statute.

There arises in consideration of this case the implication that there exists an insurance language and that in this language the terms "policyholders, beneficiaries, and insureds" do not refer to reinsured insurance companies. The indications are that the term "insured" does not have a precise and narrowly conceived meaning. In *Great American Ins. Co. v. Fireman's Fund Ins. Co.*, (2d Cir. 1973) 481 F.2d 948, a reinsurance company issued a cancellation of binder to a company it had reinsured. The document used the word "insured" and not the term "reinsured." The court reasoned that common sense and the practical usage of the term "insured" warranted the conclusion that "reinsured" had been meant.

The judgment of the trial court should be reversed and the claim of Foremost Life Insurance granted priority as a Class 3 claim.