Marjorie I. TAYLOR, Plaintiff-Appellant,

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, Income Shelters, Inc., Defendants-Appellees.

No. 2–783A257.

Court of Appeals of Indiana, Third District.

Oct. 18, 1983.

Dean E. Richards, Richard L. Brown, Jr., Richards, Caress, Vargo & Light, Indianapolis, for plaintiff-appellant.

Linley E. Pearson, Atty. Gen., Indianapolis, for defendants-appellees.

GARRARD, Judge.

The Employment Security Division determined that Taylor was ineligible for unemployment compensation benefits because she did not have wage credits of at least $900 in the last two quarters of her base period as required by IC 22–4–14–5.[1] She appeals.

The employer did not appear at the hearing before the referee, and neither the employer nor the Review Board have filed an

appellee's brief. Among the issues Taylor argues is the assertion that the determination that there were insufficient wage credits is contrary to the evidence and contrary to law.

The division correctly determined that Taylor's base period ended September 30, 1982. The critical period was therefore the preceding six months. IC 22–4–14–5.

At the hearing Taylor testified without contravention that she last worked for the employer on March 1, 1982. She was then placed on sick leave and was subsequently terminated. Her unchallenged testimony was that the employer paid her $1100 per month while she was on sick leave to a total after deductions of $10,965.68.[2]

The referee's decision, adopted by the Review Board, determined:

"Referee also finds that the claimant was on a sick leave authorized by the employer and during the time of her sick leave period claimant was receiving a $400 a month sick pay. This amount is not considered income to the claimant."

The controlling provision in the Employment Security Act is IC 22–4–4–2. This section initially defines "wages" to include "all remuneration" except as specifically otherwise provided in the rest of the section.[3] The section proceeds by stating that the term "wages" shall not include:

"(b) The amount of any payment ... made to, or on behalf of, an individual ... under a plan or system established by an employer which makes provision generally for individuals performing service for it ... on account of ... (ii) sickness or accident disability...."

\* \* \* \* \* \*

"(2) The amount of any payment on account of sickness or accident disability, or medical or hospitalization expenses in connection with sickness or

1. The base period consists of the first four of the last five completed calendar quarters preceding the first day of the benefit period. IC 22–4–2–12.

2. During Taylor's testimony she identified several exhibits concerning payments to her.

However, the record does not disclose that they were ever offered into evidence and they do not appear in the transcript.

3. IC 22–4–4–1 defines "remuneration" as including "sick pay."

accident disability made by an employer to, or on behalf of, an individual performing services for it *and after the expiration of six [6] calendar months following the last calendar month in which the individual performed services for such employer;"*

(emphasis added.) The italicised phrase in subsection (b)(2) is certainly no model for clarity in expression.[4]

In construing the statute we are to bear in mind its broad humanitarian purpose. *Potts v. Rev. Bd.* (1982), Ind.App., 438 N.E.2d 1012. Additionally, we presume that all the words in the statute are to be given meaning, *Kidwell v. State* (1967), 249 Ind. 430, 230 N.E.2d 590, *cert. denied* 392 U.S. 943, 88 S.Ct. 2326, 20 L.Ed.2d 1405, and that its provisions should be reconciled where possible. *Foremost Life Ins. Co. v. Dept. of Ins.* (1980), Ind., 409 N.E.2d 1092.

Concerning the two provisions, (b) and (2), which deal with the payment of sick pay as wages, we believe the regulations promulgated by the division provide the only reasonable interpretation:

"Section 2(b)(2) [IC 22–4–4–2(b)(2) ] excludes from the definition of wages amounts paid by an employer to an employee (in absence of a plan or system) for sickness or accident disability, or medical or hospitalization expense, after the expiration of six calendar months following the last calendar month in which the employee performed services for the employer. In absence of a plan or system by the employer to provide for such payments, sick or accident pay will be deemed wages for the first six months following the last month of employment."

640 I.A.C. 1–7–2. IC 22–4–4–3 then defines wage credits. It provides inter alia that "[w]age credits ... may not include payments specified in section 2(b) of this chapter."

As previously discussed, section 2(b) [IC 22–4–4–2(b) ] is concerned with identifying

payments which are to be *excluded* from the term "wages." In terms of IC 22–4–4–2(b)(2) this means non-plan payments of sick pay made *after* the first six months. 640 I.A.C. 1–7–2. Analytically, such payments made during the first six months do constitute wages because they are "remuneration," IC 22–4–4–1, and are not excluded from wages by any of the subsections of IC 22–4–4–2(b). We think the legislative intent in section 3 was simply to exclude for "wage credit" purposes the same forms of remuneration that section 2 excludes for "wages" purposes.

Accordingly, under both the evidence and the facts as found by the referee, Taylor would have been entitled to have the sick pay payments to her from April to August 31 considered as wage credits, unless they were disqualified by virtue of the "plan or system" exclusion of IC 22–4–4–2(b). The referee, however, made no finding that there was a plan or system, nor does it appear from the record whether or not there was.

The referee's finding that the sick pay "is not considered income to the claimant" will not sustain the judgment. Even if the referee meant the term "income" to denote "wages," that finding is incorrect in the absence of evidence that the first six months of sick pay was paid pursuant to a plan or system within the meaning of IC 22–4–4–2(b).

Reversed and remanded for such further proceedings as may be necessary.

HOFFMAN, P.J., and STATON, J., concur.

---

**4.** In addition, the provision denominated (2) and five other exclusions are printed as subsections to the paragraph denominated (b). These paragraphs are all separated by semicolons and their contents appear to be mutually exclusive. In reality they state seven separate exclusions from the definition of "wages." 1983 amendments to the statute reflect this.